MORGAN, LEWIS & BOCKIUS LLP
Daniel Johnson, Jr., SBN 57409
Michael J. Lyons, SBN 202284
Ahren C. Hsu-Hoffman, SBN 250469
David V. Sanker, SBN 251260
Solandra J. Craig, SBN 263923
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2122
Telephone: 650.843.4000
Facsimile: 650.843.4001
Email:  djjohnson@morganlewis.com
Email:  mlyons@morganlewis.com
Email:  ahsu-hoffman@morganlewis.com
Email:  dsanker@morganlewis.com
Email:  scraig@morganlewis.com

Attorneys for Defendant and
Counter-Plaintiff INTTRA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GT NEXUS, INC., a Delaware corporation,<br>Plaintiff,<br>v.<br>INTTRA, INC., a Delaware corporation,<br>Defendant,<br>and<br>INTTRA, INC., a Delaware corporation,<br>Counter-Plaintiff,<br>v.<br>GT NEXUS, INC., a Delaware corporation,<br>CROWLEY MARITIME CORPORATION, a Delaware corporation, CROWLEY LINER SERVICES, INC., a Delaware corporation, INDEPENDENT CONTAINER LINE, LTD., a Bahamas corporation,  SEABOARD MARINE, LTD., INC., a Liberian corporation, SEA STAR LINE, LLC, a Delaware corporation, TURKON LINES AMERICA, INC., a Turkish corporation, BACARDI-MARTINI PRODUCTION, a French corporation,<br>Counter-Defendants. | Case No. CV 4:11-cv-02145-SBA<br><br>**INTTRA, INC.'S OPPOSITION TO BACARDI-MARTINI PRODUCTION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND REQUEST FOR JURISDICTIONAL DISCOVERY**<br><br>Date:          May 1, 2012<br>Time:         1:00 PM<br>Div.:           Oakland Division<br>Judge:        The Honorable Saundra B. Armstrong<br>Dept.:         Ctrm. 1, 4th Floor |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND .................................................................................................... 2

III.   INTTRA HAS MADE A PRIMA FACIE SHOWING OF PERSONAL
JURISDICTION.................................................................................................... 5

     A.     The Relevant Standards For Personal Jurisdiction Over Bacardi Production......... 6

     B.     Bacardi Production Is Subject To Specific Jurisdiction Based On Its
Infringing Activities Directed At California............................................................ 7

          1.     Bacardi Production's Connection To And Use Of The Oakland-
Based GT Nexus Platform To Manage Shipments Of Spirits Here
Constitutes "Minimum Contacts" ................................................................ 7

          2.     INTTRA's Claims Arise Out Of Bacardi Production's Infringing
Activities ...................................................................................................... 10

     C.     Exercise Of Jurisdiction Over Bacardi Production Is Fair And Reasonable ........ 10

          1.     Bacardi Production's Voluntary Actions And The Foreseeability Of
Being Subject To Litigation Clearly Offset The Alleged Burden Of
Defending This Suit In California............................................................. 11

          2.     Both California And The United States Have Significant Interests
In Resolving A United States Patent Dispute Arising From Conduct
That Occurred In California ....................................................................... 12

          3.     The States' Shared Interest In Furthering Fundamental Substantive
Social Policies Is Served By Holding Bacardi Production
Accountable In The Forum From Which INTTRA's Claims Arise ......... 13

     D.     Bacardi Production Is Further Subject To General Jurisdiction Based On
The Substantial And Continuous Activities Of The Bacardi Group In
California And The United States ........................................................................ 13

     E.     If Contacts With California Are Deemed Insufficient, Contacts With The
United States As A Whole Conclusively Establish Jurisdiction Under The
Federal Long-Arm Statute................................................................................... 16

IV.   TO THE EXTENT THIS EVIDENCE IS FOUND LACKING, INTTRA
SHOULD BE GRANTED LEAVE TO CONDUCT JURISDICTIONAL
DISCOVERY ....................................................................................................... 17

V.     CONCLUSION .................................................................................................... 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

i

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1

2

## TABLE OF AUTHORITIES

3                                                                                              **Page(s)**

CASES

4

5

*Akro Corp. v. Luker*,
    45 F.3d 1541 (Fed. Cir. 1995)...................................................................... 5, 6, 7, 11

6

7

*Bauman v. DaimlerChrysler Corp.*,
    644 F.3d 909 (9th Cir. 2011)............................................................................... 14

8

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994)............................................................................... 6

9

10

*Bradford Co. v. Conteyor North America, Inc.*,
    603 F.3d 1262 (Fed. Cir. 2010)............................................................................ 16

11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)................................................................................. 10, 17

12

13

*Columbia University v. Boehringer Mannheim GmbH*,
    35 USPQ2d 1364 (D. Mass. 1995) ..................................................................... 11

14

15

*CompuServe, Inc. v. Patterson*,
    89 F.3d 1257 (6th Cir. 1996)............................................................................ 6, 8, 9

16

17

*Doe v. Unocal*,
    248 F.3d 915 (9th Cir.2001)............................................................................... 14

18

*Forouhar v. Asa*,
    No. 10-3623, 2011 WL 4080862 (J. Armstrong, N.D. Cal. Sept 13, 2011) .......................... 19

19

20

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002)............................................................................... 9

21

22

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003)............................................................................. 18

23

*HollyAnne Corp. v. TFT, Inc.*,
    199 F.3d. 1304 (Fed. Cir. 1999)............................................................................ 9

24

25

*Laub v. U.S. Dep't of the Interior*,
    342 F.3d 1080 (9th Cir. 2003)............................................................................. 17

26

*Martinez v. Aero Caribbean*,
    No. 11-3194, 2012 WL 258658 (N.D. Cal. Jan. 27, 2012) .................................................. 19

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

ii

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

DB2/ 22965849.1

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Meier v. Sun Int'l Hotels, Ltd.*,
   288 F.3d 1264 (11th Cir. 2002) ............................................................. 15

*NTP, Inc. v. Research in Motion, Ltd.*,
   418 F. 3d 1282 (Fed. Cir. 2005) ("*NTP II*") ................................... 8, 10

*Nuance Comm., Inc. v. Abbyy Software House*,
   626 F.3d 1222 (Fed. Cir. 2010) .................................................... *passim*

*Patent Rights Protection Group, LLC v. Video Gaming Technologies, Inc.*,
   603 F.3d 1364 (Fed. Cir. 2010) ........................................................ 14, 17

*Quigley v. Guvera IP Pty Ltd.*,
   No. 10-3569, 2010 WL 5300867 (Dec. 20, 2010) ................................... 8

*Stomp, Inc. v. Neato, LLC*,
   61 F. Supp. 2d 1074 (C. D. Cal. 1999) ................................................... 9

*United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
   987 F.2d 39 (1st Cir. 1993) ................................................................... 15

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
   556 F.2d 406 (9th Cir. 1977) ................................................................ 18

**STATUTES**

35 U.S.C. §§ 283 and 284 ........................................................................ 12

Cal. Civ. Proc. Code §410.10 ..................................................................... 6

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 4(k)(2) ........................................... *passim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.**    **INTRODUCTION**

Bacardi-Martini Production's ("Bacardi Production") motion to dismiss for lack of personal jurisdiction from this patent infringement action must be denied.

*First*, Bacardi Production's assertion that it is confined to France, with "no contacts whatsoever with the State of California," is not accurate.  While it is incorporated and has employees in France, Bacardi Production's reach is not so limited.  Rather, as its name implies, Bacardi Production is a production arm of one the world's largest spirits companies and makes spirits that are sold everywhere, including California.  It has purposefully directed activities at California that have given rise to INTTRA's infringement claims for its patents relating to an e-commerce platform for the ocean container shipping industry.  As it admits, Bacardi Production is a registered user of the shipping management platform operated by Oakland-based GT Nexus, Inc. This platform is at the heart of INTTRA's infringement claims.  Bacardi Production infringes by using this platform to manage shipments of its products into California and the United States. In addition, as a member of GT Nexus' community of users, Bacardi Production receives support and guidance from Oakland-based GT Nexus and collaborates with other community members here, such as Oakland-based Crowley Maritime Corporation.  These activities establish Bacardi Production as a *local* infringer of at least one INTTRA patent.  Nothing more is required for jurisdiction.

*Second*, the law does not permit a defendant to avoid jurisdiction where, as is the case with Bacardi Production, it has an *alter ego* and *agent* counterpart that has extensive contacts with this forum.  To profit from the spirits it makes, Bacardi Production has a marketing, sales, and distribution arm in its principal markets, such as the United States.  There is no dispute that Bacardi U.S.A., with an establishment in Seal Beach, California, carries out these activities on a systematic and continuous basis.  Despite confusing assertions about the production and marketing/sales arms being "directly" owned by different Bacardi entities, the fact is that Bacardi U.S.A. and Bacardi Production are instrumentalities of the same dominant Bacardi parent, which refers to itself and all other Bacardi companies as an inseparable "group."  Both of these entities,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

1

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1    like all others in the Bacardi group, serve to fulfill the common mission of making and selling

2    spirits.  As neither has a separate corporate identity—and their separate corporate status is a mere

3    formality—the activities of one, *i.e.*, Bacardi U.S.A., can be imputed to the other, *i.e.*, Bacardi

4    Production, to establish jurisdiction.

5         *Finally*, Bacardi Production's contacts with the United States as a whole, rather than just

6    California, establish jurisdiction under the Federal long-arm statute, Federal Rule of Civil

7    Procedure 4(k)(2).  INTTRA has alleged that jurisdiction is proper under Rule 4(k)(2) and that

8    Bacardi Production has committed acts of infringement in the United States.  Although it bore the

9    burden of doing so, Bacardi Production *submitted no evidence contradicting these assertions*,

10   instead focusing on immaterial activities that allegedly do not occur in California.  As INTTRA's

11   allegations regarding Bacardi Production's contacts with the United States stand uncontroverted,

12   jurisdiction can be sustained on this basis alone.

13        Accordingly, Bacardi Production is subject to jurisdiction on any of the above grounds.

14   To the extent the Court has any concerns about the sufficiency of this evidence, INTTRA should

15   be permitted to conduct jurisdictional discovery so that it can fully and fairly address at least the

16   matters raised in Bacardi Production's motion and one-sided declaration testimony from its

17   manufacturing director.

18   **II.   BACKGROUND**

19        INTTRA is the leading global provider of e-commerce solutions for the ocean freight

20   industry, managing shipments using an e-commerce platform.  INTTRA was formed in October

21   2000 by a consortium of leading global ocean carriers (Maersk Line, CMA CGM, Hamburg Sud,

22   Hapag-Lloyd, Mediterranean Shipping Co and P&O Nedlloyd).  INTTRA enables shippers,

23   freight forwarders, third party logistics providers, brokers, importers and industry portals to

24   manage the booking, documentation, and tracking of cargo across multiple shipping lines in a

25   single integrated process.

26        INTTRA's business is built on the technology it developed to electronically manage this

27   "common carrier system."  INTTRA filed a patent application on this innovative technology at

28   the time it was founded.  During the next few years, INTTRA filed several additional patent

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO
DB2/ 22965849.1                                          2                    INTTRA'S OPPOSITION TO BACARDI'S
                                                                              MOTION TO DISMISS; 4:11-CV-02145-SBA

1  applications based on the same original patent application.  Four of the patent applications issued

2  in 2010.  These four patents are at the heart of the present litigation involving GT Nexus as the

3  mastermind infringer, certain ocean carriers, and Bacardi Production, a shipper.

4       GT Nexus, Inc., a company headquartered in Oakland, California, provides a platform for

5  managing ocean cargo that infringes INTTRA's patents (the "GT Nexus Platform").  INTTRA's

6  Answer and Countercl. ¶¶ 64, 80-83, 138-151 (Dkt. No. 20) ("INTTRA's Answer").  The GT

7  Nexus Platform enables business networks and permits inter-company collaboration for carriers

8  and shippers.  *Id*. at ¶ 80.  GT Nexus refers to the carriers and shippers that connect to the GT

9  Nexus Platform as the "GT Nexus Community.  *Id*. at ¶ 81.  For the GT Nexus Platform to work

10 and be successful, GT Nexus needs this community of carriers and shippers to connect to and use

11 the GT Nexus Platform.  *Id*. at ¶ 82.  As GT Nexus explains on its website, "A platform needs a

12 community. Community gives the platform ultimate value."  *Id*.  GT Nexus and the carriers and

13 shippers in the GT Nexus Community work collectively or at least take separate actions that

14 collectively unite to operate and use the GT Nexus Platform.  *Id*. at ¶ 83.

15      The current lawsuit began after INTTRA approached GT Nexus to discuss licensing the

16 INTTRA patents.  Rather than negotiate a license, GT Nexus launched the current declaratory

17 judgment action.  INTTRA responded by asserting infringement by GT Nexus and other members

18 of the GT Nexus community, including Bacardi Production and several ocean carriers.  All of the

19 ocean carriers have answered without contesting jurisdiction.  Bacardi Production is the only

20 defendant in the GT Nexus community to challenge jurisdiction.[1]

21      Bacardi Production is a production arm of the largest privately held spirits company in the

22 world, Bacardi Limited, which – to use the company's own terminology – refers to the "Bacardi

23 group of companies" (hereinafter, "Bacardi Group") that markets and sells products all over the

24 world.  Declaration of Michael J. Lyons in Support of INTTRA's Opposition to Motion to

25 Dismiss ("Lyons Decl.") Exs. 2 and 5.  Bacardi-made products (*e.g.*, Bacardi rums, Grey Goose

26 vodka, *etc.*) are marketed and sold extensively in the United States, which is one of the Bacardi

27

28

---

[1] INTTRA properly served Bacardi Production in France on January 9, 2012 pursuant to the Hague Convention.  Proof of service was filed with the Court on February 3, 2012 (Dkt. No. 54).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

3

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1   Group's principal markets.  Lyons Decl. Exhs. 1 and 4.  Bacardi's operations employ over 1200

2   people in 34 states and Puerto Rico.  Lyons Decl. Ex. 2.

3         To manage its ocean cargo, Bacardi Production uses the GT Nexus Platform.  INTTRA's

4   Answer ¶¶ 73, 109; Bacardi Productions Mot. at 1.  In this regard, Bacardi Production has a

5   service agreement with GT Nexus, is a part of the GT Nexus Community and connects to and

6   uses GT Nexus' Platform.  GT Nexus, Inc.'s Amd. Answer To Countercl., ¶ 110  (Dkt. No. 35)

7   ("GT Nexus' Amd. Answer").  In 2011 alone, Bacardi Production executed hundreds of

8   transactions, including container bookings, using the GT Nexus Platform.  Declaration of

9   Christopher Legros in Support of INTTRA's Opposition to Motion To Dismiss ("Legros Decl.")

10  ¶ 3.  For example, in 2011, Bacardi Production used the GT Nexus Platform to request over 200

11  container bookings with a point of delivery in the United States.  *Id.*  Tellingly, Bacardi

12  Productions' manufacturing director does not deny his company uses the GT Nexus Platform to

13  manage shipments of Bacardi spirits to the United States, including California.

14        In addition, Bacardi Production receives benefits as a part of the GT Nexus Community,

15  such as guidance, direction, and support from GT Nexus in connection with its use of the GT

16  Nexus Platform.  GT Nexus' Amd. Answer ¶ 111.  Bacardi Production's manufacturing director

17  disputes none of this either.

18        Because it connects to, uses, and forms a part of the Oakland-based GT Nexus Platform,

19  Bacardi Production infringes INTTRA's U.S. Patent No. 7,752,142, ("the '142 Patent").  For

20  example, Claim 1 of the '142 Patent recites:

21        A computer network comprising:

22        *a customer computer* configured to enable a customer to create a
          first container booking request;
23

24        *a first carrier computer* configured to receive said first container
          booking request over a first communication pathway and confirm
          the first container booking request over the first communication
25        pathway, thereby creating a first container booking; and

26        *a shipping coordinator computer* including a storage, the shipping
          coordinator computer configured to periodically receive and store
27        information from said first carrier computer over a second
          communication pathway relating to said first container booking and

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

4

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

other container bookings and to store the received information in the storage,

the shipping coordinator computer further configured to receive from the customer computer a request for information relating to the first container booking, configured to search for a match between the request for information pertaining to the first container booking and the stored information from the first carrier computer, and configured to then provide said stored first container booking information to said customer computer upon receiving the request for said first container booking information, and prior to receiving the next periodic information from said first carrier computer, and

the shipping coordinator computer configured to receive and store the information relating to said first container booking prior to receiving a first request from the customer computer for the information relating to said first container booking.

Compl. (Dkt. 1) Ex. A.  As a member of the GT Nexus Community and user of the GT Nexus Platform for making ocean container bookings, Bacardi Production, in concert with the other defendants, infringes this claim at least because it provides a "customer computer" for making bookings. Together with GT Nexus and the other carrier defendants in this case, Bacardi Production exercises control or direction over the operation of the carrier defendants' system components claimed.  INTTRA's Answer ¶¶ 147-48.  As such, Bacardi Production is jointly and severally liable as an infringer.

## III.    INTTRA HAS MADE A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION

Bacardi Production's Motion to Dismiss comes before INTTRA has had the opportunity to elicit any discovery.  Without discovery and a record on jurisdiction, the Court must resolve all factual disputes in the plaintiff's favor.  *Nuance Comm., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).  "[W]here the plaintiff's factual allegations 'are not directly controverted, [they] are taken as true for purposes of determining jurisdiction . . . .' " *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994)).  To survive a motion to dismiss in the absence of jurisdictional discovery, the plaintiff need only make a prima facie showing of jurisdiction. *Nuance*, 626 F.3d at 1231.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

5

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1

**A.      The Relevant Standards For Personal Jurisdiction Over Bacardi Production**

2      Two different statutes govern the personal jurisdiction inquiry:  (1) the California long-

3  arm statute, Cal. Civ. Proc. Code §410.10, and (2) the Federal long-arm statute, Fed. R. Civ. P.

4  4(k)(2).

5      Under California's long-arm statute, a court "may exercise jurisdiction on any basis not

6  inconsistent with the Constitution of this state or of the United States."  Cal. Civ. Proc. Code

7  §410.10.  It is well established that the scope of personal jurisdiction permitted under California's

8  long-arm statute is equal to the limits of due process under the United States Constitution.

9  *Nuance Comm., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).  For

10  jurisdictions in which the applicable long arm statute extends to the fullest reach permitted by the

11  due process clause of the United States Constitution, the District Court's sole inquiry becomes

12  whether the exercise of personal jurisdiction over the defendant is consistent with the

13  requirements of due process.  *Akro,* 45 F.3d at 1544.

14      Thus, in order for there to be personal jurisdiction over a non-resident defendant pursuant

15  to California's long-arm statute, due process requires that the defendant must have purposeful,

16  minimum contacts with the forum state such that the defendant can reasonably anticipate that its

17  contacts with the forum may subject it to litigation there.  *Beverly Hills Fan*, 21 F.3d at 1565;

18  *Akro,* 45 F.3d at 1545 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985)).

19      For due process to be satisfied, the defendant must have "minimum contacts" with the

20  forum state.  *Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285,

21  1296-97 (Fed. Cir. 2009) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 315

22  (1945)). The court has established three criteria to determine whether, given the facts of the case,

23  the defendant has sufficient "minimum contacts" with the forum state that the district court's

24  exercise of jurisdiction would "comport with traditional notions of fair play and substantial

25  justice." *Synthes*, 563 F.3d at 1295; *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir.

26  1996). Alternatively, Rule 4(k)(2) personal jurisdiction may be supported by contacts with the

27  United States as a whole.

28      A defendant's contacts with a forum may provide a court with either general or specific

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

6

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1   jurisdiction. To be subject to general jurisdiction, a defendant must maintain "continuous and

2   systematic general business contacts" with the forum, even when the cause of action has no

3   relation to those contacts. *Synthes*, 563 F.3d at 1297. To establish specific personal jurisdiction,

4   the Court considers three factors:  (1) whether the defendant purposely directed its activities at

5   residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities

6   with the forum; and (3) whether the assertion of personal jurisdiction is reasonable and fair. *Id.;*

7   *Akro Corp.*, 45 F.3d at 1545-46.[2]

8          If a Court determines that no general jurisdiction or specific jurisdiction exists over a

9   defendant under a state long arm statute, then the federal long arm statute, Fed. R. Civ. P. 4(k)(2),

10  may provide personal jurisdiction.  Whereas state long arm statutes require a showing that the

11  parties have sufficient contacts with the forum state, Rule 4(k)(2) requires a showing that the

12  parties have sufficient contacts with the United States as a whole.  *Synthes*, 563 F.3d at 1287.

13         Here, there are at least three grounds for jurisdiction.  *First*, Bacardi Production has the

14  requisite contacts with California as an infringer using the GT Nexus Platform to sustain specific

15  jurisdiction.  *Second*, the contacts of Bacardi Production's domestic affiliates, *i.e.*, Bacardi

16  U.S.A., which have substantial and continuous activities here, may be imputed to Bacardi

17  Production to find general jurisdiction.  *Third*, if necessary, Bacardi Production's activities with

18  the United States as a whole (which Bacardi Production did not controvert) may be considered to

19  sustain jurisdiction under the Federal long-arm statute.  Given Bacardi Production's contacts and

20  the lack of any alternative forums, jurisdiction on any of these grounds is reasonable.

**B.      Bacardi Production Is Subject To Specific Jurisdiction Based On Its
         Infringing Activities Directed At California**

**1.      Bacardi Production's Connection To And Use Of The Oakland-Based
         GT Nexus Platform To Manage Shipments Of Spirits Here Constitutes
         "Minimum Contacts"**

24         The first prong of the "minimum contacts" test is satisfied where, as here, the defendant

25  purposefully directed its activities toward the forum. *Nuance*, 626 F.3d at 1231.  Bacardi

---

[2] The burden is on plaintiff to establish the first two prongs of the minimum contacts test. *Akro
Corp.*, 45 F.3d at 1545-46.  The defendant has the burden to prove the third prong, that
jurisdiction would be constitutionally unreasonable. *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

7

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1   Production admits that it is registered to use and uses the GT Nexus Platform based in Oakland.

2   As a user, Bacardi Production is connected not only with Oakland-based GT Nexus, but also

3   U.S.-based carriers that are registered with the system, such as Oakland-based Crowley Maritime

4   Corporation.  It is this community of users, brought together by GT Nexus in Oakland, that

5   exercises control and direction over the GT Nexus Platform to jointly infringe INTTRA's '142

6   Patent.

7            Bacardi Production's contention that it interfaces with the GT Nexus Platform from

8   France is beside the point.  The fact is that Bacardi Production uses and benefits from a GT Nexus

9   Platform located here.  As is indicated by uncontroverted information available to INTTRA,

10  Bacardi Production uses the infringing platform to manage shipments of Bacardi spirits from the

11  production facilities in France to its U.S. distribution arm, Bacardi U.S.A., which maintains a

12  location in Seal Beach, California.  Even if Bacardi Production's use was somehow deemed

13  limited to France, it is settled law that infringement under § 271(a) is not automatically precluded

14  because a component (*i.e.*, Bacardi Production's "customer computer") is located outside the

15  United States.  *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1322-25 (Fed. Cir. 2005)

16  ("*NTP II*").

17           Indeed, courts in this district have found jurisdiction based on commercial activity

18  conducted over the Internet.  *See Quigley v. Guvera IP Pty Ltd.*, No. 10-3569, 2010 WL 5300867,

19  *3 (Dec. 20, 2010) ("[T]he likelihood that personal jurisdiction can be constitutionally exercised

20  is directly proportionate to the nature and quality of commercial activity that an entity conducts

21  over the internet.").  A physical presence in the forum, therefore, is not necessary to show that a

22  defendant has purposefully availed itself of the forum.  Instead, a defendant purposefully avails

23  itself of the forum when it takes actions that create a *connection* with the forum.

24           In *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996), for example, the

25  Sixth Circuit found jurisdiction based on the defendant's actions of subscribing to a service,

26  entering into a Registration Agreement, and repeatedly loading information onto the subscribed

27  service.  *Id.* at 1264-66.  The court held that this created a connection that was substantial enough

28  to put the defendant on notice that he could be hailed into a court in the forum.  "[S]omeone …

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

8

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1    who employs a computer network service … to market a product can reasonably expect disputes

2    with that service to yield lawsuits in the service's home state." *Id.* at 1268; *Stomp, Inc. v. Neato,*

3    *LLC*, 61 F. Supp. 2d 1074, 1077 (C. D. Cal. 1999) (relying on *CompuServe* and asserting

4    jurisdiction over defendant who used the Internet to market and sell its products in the forum

5    state).   Like the defendant in *CompuServe*, Bacardi Production registered to use, connects to, and

6    comprises a component of a service, the GT Nexus Platform, that infringes INTTRA's patents.

7    Bacardi Production could reasonably expect that disputes relating to this platform and its

8    infringement would be resolved where the platform is located and managed (*i.e.*, Oakland).

9         Attempting to avoid personal jurisdiction, Bacardi Production alleges that it lacks a

10   license to do business in California, a physical presence in California, or bank accounts in

11   California.  These facts are of little import when Bacardi Production manages shipments of its

12   products to the United States using the infringing platform and those products are distributed

13   using an established distribution channel. *See Nuance Comm., Inc.*, 626 F.3d at 1234 (finding

14   jurisdiction over a foreign defendant that "purposefully ship[ped] the accused software products

15   into California through an established distribution channel, with the expectation that copies of

16   those products will be sold in California").

17        Bacardi Production cites no case that found jurisdiction wanting under similar

18   circumstances.  While Bacardi Production relies on *Glencore Grain Rotterdam B.V. v. Shivnath*

19   *Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002) and *HollyAnne Corp. v. TFT, Inc.*, 199

20   F.3d. 1304, 1308 (Fed. Cir. 1999), these cases are inapposite.  In *Glencore*, both plaintiff and

21   defendant were foreign entities with *all* activity giving rise to the claim at issue occurring in

22   India. *Id*. at 1118.  In *HollyAnne*, the Federal Circuit found jurisdiction against the defendant

23   wanting but only because it was based on "one offer to donate [the accused products] and nothing

24   more" and, as a matter of law, "a mere offer to donate . . . cannot be an offer for sale." *Id.* at

25   1309.  In sharp contrast, Bacardi Production connects to and forms part of the infringing GT

26   Nexus Platform, GT Nexus is headquartered in Oakland, and Bacardi Production's shipments

27   booked and managed using the GT Nexus Platform are distributed throughout California and the

28   United States.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

9

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

2.    **INTTRA's Claims Arise Out Of Bacardi Production's Infringing Activities**

Bacardi Production's activities also satisfy the second prong of the "minimum contacts" test—namely, that the claims arise out of, and relate to the purposefully directed activities—because INTTRA's infringement claims relate to Bacardi Production's use of the Oakland-based GT Nexus Platform.  Indeed, as INTTRA has alleged, Bacardi Production together with GT Nexus and at least one other carrier jointly infringe the '142 Patent by using in the United States the GT Nexus Platform, which embodies the patented invention.  INTTRA's Answer ¶ 147.

Bacardi Production does not dispute this element is satisfied excerpt to reiterate its contention that use of the GT Nexus Platform is limited to France, where its employees are located.  Again, this is unavailing. What matters for infringement of a system claim, like Claim 1 of the '142 Patent, is where beneficial use occurs.  In *NTP II*, the Federal Circuit found that RIM, a Canadian company, was liable for infringement of system claims, even though a component of the system was operated entirely in Canada, because beneficial use of RIM's Blackberry system occurred in the United States.  *NTP II*, 418 F.3d at 1322-25.  Here, just like RIM, Bacardi Production is still liable for infringement of the '142 Patent's system claims because beneficial use of the GT Nexus Platform occurs in the United States.  It is used not only to connect to and collaborate with Oakland-based GT Nexus and U.S.-based carriers, but also to manage ocean containers full of spirits heading into California and other states.

C.    **Exercise Of Jurisdiction Over Bacardi Production Is Fair And Reasonable**

This factor "applies only sparingly." *Nuance*, 626 F.3d at 1231.  When a defendant seeks to rely on the "fair play and substantial justice" factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.  As the Federal Circuit has cautioned, "defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

10

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1    forum.' " *Akro*, 45 F.3d at 1549 (quoting *Beverly Hills Fan Co.*, 21 F.3d at 1568).

2         The reasonableness inquiry considers five factors: (1) the burden on the defendant; (2) the

3    interests of the forum state; (3) the plaintiff's interest in obtaining convenient and effective relief;

4    (4) the interstate judicial system's interest in obtaining the most efficient resolution of

5    controversies; and (5) the shared interest of the several states in furthering fundamental

6    substantive social policies. *Synthes,* 563 F.3d at 1299.  Dismissals for lack of personal

7    jurisdiction "are limited to the rare situation in which the plaintiff's interest and the state's interest

8    in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the

9    burden of subjecting the defendant to litigation within the forum."  *Nuance*, 626 F.3d at 1231

10   (quoting *Beverly Hills Fan Co.*, 21 F.3d at 1568).

11            **1.    Bacardi Production's Voluntary Actions And The Foreseeability Of**
                      **Being Subject To Litigation Clearly Offset The Alleged Burden Of**
12                    **Defending This Suit In California**

13        The first factor considered in the reasonableness inquiry is the burden of appearance.

14   Bacardi Production submits two reasons why its burden will be great and why personal

15   jurisdiction would be unfair.  Bacardi Production argues it has no physical presence in California

16   and it would need to litigate this matter "from France … in a foreign land and legal system."

17   Bacardi-Martini Production's Mot. to Dismiss p.6, (Dkt. No. 53) ("Bacardi Mot.").  However, the

18   Federal Circuit has held that "progress in communications and transportation has made the

19   defense of a lawsuit in a foreign tribunal less burdensome."  *Synthes*, 563 F.3d at 1299 (quoting

20   *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)); *See also Columbia*

21   *University v. Boehringer Mannheim GmbH*, 35 USPQ2d 1364, 1368 (D. Mass. 1995) (asserting

22   personal jurisdiction in Massachusetts over German company and holding "a multinational

23   corporation with over $1 billion in annual sales will not suffer unduly by being called to account

24   in Massachusetts for the activities it has conducted here").

25        Moreover, as explained in more detail below, Bacardi Production is essentially part of a

26   single entity, the Bacardi Group, that has extensive contacts with and experience in the United

27   States.

28        The Federal Circuit has held that assertion of jurisdiction was not burdensome where the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

11

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1   foreign entity established a distribution system that was intended to deliver products to the US

2   market via a commonly owned California entity and where the foreign entity operated under a

3   Global Management Team. *Nuance*, 626 F.3d at 1234. Here, the Court held the foreign entity

4   knew the destination of its products and its conduct and connections with the forum were such

5   that it should have reasonably anticipated being brought into court in the forum. *Id.*

6       Bacardi Production should not be allowed to hide behind the technicality that it is not

7   "***directly*** owned or controlled by the same entity" as Bacardi U.S.A. Declaration of Thierry

8   Desmolis in Support of Bacardi Production's Motion to Dismiss ("Desmolis Decl.") ¶ 7

9   (emphasis added). Bacardi Production is part of a tightly integrated group of global companies

10  with an international presence. "These relationships should ameliorate any possible burden of

11  litigating in California." *Nuance*, 626 F.3d at 1234.

12          **2.      Both California And The United States Have Significant Interests In
                       Resolving A United States Patent Dispute Arising From Conduct That
13                     Occurred In California**

14      The second factor considered is the interest of the forum state in adjudicating the dispute

15  and the third factor involve a related concept—plaintiff's interest in obtaining convenient and

16  effective relief. Bacardi Production argues that INTTRA's claims are directed towards the GT

17  Nexus Platform and GT Nexus' technology and that INTTRA cannot recover for infringement

18  from Bacardi Production. Bacardi Mot. at 7. Neither point has merit. INTTRA's claims for

19  patent infringement arise out of the connection that Bacardi Production makes to the GT Nexus

20  Platform and Bacardi Production's use of GT Nexus' technology.

21      As discussed above, INTTRA's patent covers the system created when Bacardi

22  Production connects to and forms part of the GT Nexus Platform. The interest of INTTRA and

23  the United States in adjudicating this dispute, and in obtaining effective and convenient relief,

24  sufficiently outweighs any burden on Bacardi Production. *See Synthes*, 563 F.3d at 1299.

25      The United States also has an interest in discouraging injuries resulting from patent

26  infringement that occur within its boundaries. *Id.* Contrary to Bacardi Production's assertion,

27  INTTRA is entitled to compensation from GT Nexus and Bacardi Production for infringement

28  pursuant to 35 U.S.C. §§ 283 and 284. Furthermore, INTTRA has no adequate remedy at law,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

12

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1    and will suffer irreparable harm if GT Nexus and Bacardi Production and are not enjoined from

2    further infringement of the '142 Patent. *See* INTTRA's Answer and Counterclaims.

3           **3.      The States' Shared Interest In Furthering Fundamental Substantive
                    Social Policies Is Served By Holding Bacardi Production Accountable
4                    In The Forum From Which INTTRA's Claims Arise**

5           The fourth and fifth factors are concerned with "the potential clash of substantive social

6    policies between competing for and the efficiency of a resolution to the controversy." *Synthes*,

7    563 F.3d at 1300.  Bacardi Production fails to allege that it is subject to jurisdiction in another

8    state.  Bacardi Production, rather, contends that California has no jurisdiction.  Bacardi Mot. at 5-

9    7.  Thus, there is no other forum to compare efficiency or social policies. *Id*.  However,

10   California has an interest in adjudicating disputes that arise and cause harm, in California.

11   Likewise, the United States has an interest in adjudicating patent disputes under its patent laws.

12   Moreover, it is in the interest of efficiency that this court asserts jurisdiction over Bacardi

13   Production so that INTTRA's claims against both GT Nexus and Bacardi Production, which

14   together form the infringing system, can be efficiently adjudicated.

15         **D.      Bacardi Production Is Further Subject To General Jurisdiction Based On
                   The Substantial And Continuous Activities Of The Bacardi Group In
16                 California And The United States**

17         There is no dispute that the Bacardi Group, through at least its wholly-owned subsidiary,

18   Bacardi U.S.A., has substantial and continuous contacts with California (through at least its Seal

19   Beach office), not to mention the rest of the United States, that subject it to general jurisdiction.

20   According to its website:

21                  Bacardi U.S.A., Inc. is the import, sales, and marketing arm of one
                    of the world's leading wine and spirits producers. A wholly-owned
22                  subsidiary of Bacardi Limited, the largest privately held spirits
                    company in the world, Bacardi USA boasts a premium brand
23                  portfolio of the most-recognized and top-selling spirits in the world.
                    Bacardi USA is headquartered in Coral Gables, Florida, and
24                  employs more than 300 people. Added with other Bacardi
                    operations in the United States, Bacardi employs more than 1,200
25                  people in 34 states and Puerto Rico.

26
27   Lyons Decl. Ex. 2; *see also id.* Ex. 3 ("Bacardi U.S.A. represents a diverse portfolio of highly

28   recognized and top-selling brands in the United States."), Ex. 4 ("[Bacardi Limited] operates in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO                                              13            INTTRA'S OPPOSITION TO BACARDI'S
                                                                     MOTION TO DISMISS; 4:11-CV-02145-SBA
DB2/ 22965849.1

1   markets throughout the world with the principal markets being the United States . . . .").  The

2   Bacardi Group's corporate description further confirms that the Bacardi entities, including its

3   production arms, actually operate collectively as one "group," rather than as individual companies

4   with separate interests.  Lyons Decl. Ex. 5 ("Bacardi Limited refers to the Bacardi *group* of

5   companies….  Bacardi Limited has operations around the world, cemented by the enduring

6   quality of our products and the reputation we have worked so hard to earn and maintain."); Ex. 2

7   ("The Company operates 27 production facilities, including bottling, distilling, and manufacturing

8   facilities, located in 16 countries including Puerto Rico, Scotland, Italy, France, Spain, Germany

9   and Mexico.").

10          As courts have routinely recognized, the contacts of a domestic affiliate company may be

11  attributed to a foreign parent or affiliates for purposes of personal jurisdiction when the domestic

12  affiliate is the *alter ego* or *agent* of the foreign entities.  The Ninth Circuit, for example, recently

13  explained the "alter ego" and "agency" tests, only one of which needs to be met to confer

14  jurisdiction.  *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920–21 (9th Cir. 2011).  The two

15  prongs of the "alter ego" test are as follows:

16              (1) that there is such unity of interest and ownership that the
               separate personalities of the two entities no longer exist and (2) that
17              failure to disregard their separate identities would result in fraud or
               injustice. The first prong of this test has alternatively been stated as
18              requiring a showing that the parent controls the subsidiary to such a
               degree as to render the latter the mere instrumentality of the former.
19

20  *Bauman*, 644 F.3d at 920 (quoting *Doe v. Unocal*, 248 F.3d 915, 928 (9th Cir.2001)).  Under the

21  "agency" test, the important inquiry is the "special importance of the services performed by the

22  subsidiary." *Id.*  "The agency test is satisfied by a showing that the subsidiary functions as the

23  parent corporation's representative in that it performs services that are sufficiently important to

24  the foreign corporation that if it did not have a representative to perform them, the corporation's

25  own officials would undertake to perform substantially similar services."  *Unocal*, 248 F.3d at

26  928.

27          The agency test is not limited to a parent-subsidiary relationship.  As other circuit courts

28  have recognized, "[p]ersonal jurisdiction over affiliated parties, whether a parent or *another*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

14

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

*related subsidiary*, is warranted when the resident corporation acts on behalf of those foreign affiliates." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1273 (11th Cir. 2002) (emphasis added); *see also United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 45, 48 (1st Cir. 1993) (asserting jurisdiction over Scottish parent and co-subsidiary based on business relationship with and activities of Massachusetts subsidiary). In *Meier*, for example, the Eleventh Circuit found general jurisdiction over several affiliated Bahamian corporations based on the activities of their Florida subsidiaries. 288 F.3d at 1273-75. The subsidiaries' separate corporate existence was "simply a formality": they essentially acted as the parent corporations' accounting, advertising, and booking departments. *Id.*

Here, the "alter ego" test is met because Bacardi Production and Bacardi U.S.A. are united under the Bacardi Group umbrella. Neither maintains a separate identity apart from the collective group. As the above-quoted excerpts from its website confirm, the Bacardi Group is a group of companies whose common goal is to make and sell spirits throughout the world. The Bacardi Group accomplishes this through its production, marketing, and sales arms, *i.e.*, Bacardi Production and Bacardi U.S.A. As such, these latter entities are nothing more than mere instrumentalities of the Bacardi Group, created to fulfill the core mission of selling spirits. It would be an injustice if Bacardi Production is able to avoid jurisdiction simply because Bacardi U.S.A. is technically a different legal entity. Therefore, the substantial and continuous contacts of at least Bacardi U.S.A. with California and the United States are properly attributable to entities that comprise the Bacardi Group, including Bacardi Production.

The "agency" test is also met. Just like the Florida-based subsidiaries in *Meier*, Bacardi U.S.A.'s separate corporate existence is a mere formality. The services it performs, *i.e.*, sales and marketing, are for—and undeniably important to—the Bacardi Group as a whole and Bacardi Production. Indeed, to profit from spirits that are made by Bacardi Production, the Bacardi Group must have a sales and marketing arm. If Bacardi U.S.A. did not perform those activities, another representative would have to be appointed to perform these critical operations. Therefore, as Bacardi U.S.A. is an agent for the Bacardi Group, Bacardi U.S.A.'s contacts with California and the United States can be attributed to Bacardi Production to establish jurisdiction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

15

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

**E.      If Contacts With California Are Deemed Insufficient, Contacts With The United States As A Whole Conclusively Establish Jurisdiction Under The Federal Long-Arm Statute**

Rule 4(k)(2) provides that:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed.R.Civ.P. 4(k)(2).  Under this rule, for a court to exercise personal jurisdiction over a defendant:  (1) plaintiff's claim must arise under federal law, (2) the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction, and (3) exercise of jurisdiction must comport with due process.  *Bradford Co. v. Conteyor North America, Inc.*, 603 F.3d 1262, 1272 (Fed. Cir. 2010).

The first condition is met because INTTRA's claims against Bacardi Production arise under the federal patent laws.

The second condition is met because, while INTTRA believes that Bacardi Production is subject to jurisdiction in California for the aforementioned reasons, to the extent the Court disagrees, INTTRA is not aware of any other jurisdiction in which its patent infringement claims may be brought against Bacardi Production.  The plaintiff is not required to prove that the defendant is not subject to jurisdiction in any of the fifty states.  *Id.* at 1272 ("[A] district court [may] use Rule 4(k)(2) whenever a foreign defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible.").  To the extent Bacardi U.S.A.'s contacts are found attributable to Bacardi Production under either or both of the "alter ego" and "agent" tests, but deemed insufficient to confer general jurisdiction in California or anywhere else, the contacts that Bacardi U.S.A. has with the United States as a whole (*i.e.*, importing, marketing, and selling in all states, and employing around 1,500 people in 34 states) are no doubt sufficient to establish such jurisdiction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

16

Finally, the third condition is met because Bacardi Production has sufficient contacts with the United States.  INTTRA has alleged that jurisdiction is proper under Rule 4(k)(2) and that Bacardi Production has committed acts of infringement in the United States.  Although it bore the burden of doing so, Bacardi Production *submitted no evidence contradicting these assertions*, instead focusing on immaterial things it is does not have or do in California.  As INTTRA's allegations, stand uncontroverted regarding Bacardi Production's contacts with the United States, jurisdiction can be sustained on this basis alone.  In addition, as Bacardi Production admits, it uses and forms a part of the infringing Oakland-based GT Nexus Platform designed for transportation planning and execution activities.  There is also no dispute that the spirits Bacardi Production and the other production arms of Bacardi makes are sold in every state, and Bacardi Production does not deny that these products are transported to the United States by using the infringing platform.  Indeed, information available to INTTRA indicates that Bacardi Production executes many booking transactions with the United States as the point of destination.  Finally, as explained previously, there are substantial and continuous activities throughout the United States that are attributable to Bacardi Production.  As the review of the *Burger King* factors confirms that the exercise of jurisdiction would not be unreasonable, *see* Part III.C *supra*, jurisdiction over Bacardi Production can be conclusively established pursuant to the federal long-arm statute.

## IV.   TO THE EXTENT THIS EVIDENCE IS FOUND LACKING, INTTRA SHOULD BE GRANTED LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY

To the extent there are any questions about the sufficiency of evidence establishing Bacardi Production's contacts with California, or the United States as a whole, or about the reasonableness and fairness of exercising jurisdiction over Bacardi Production, this Court should grant INTTRA leave to take limited jurisdictional discovery.

The law of the Ninth Circuit, rather than Federal Circuit, governs requests for jurisdictional discovery.  *Patent Rights Protection Group, LLC v. Video Gaming Technologies, Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010).  In the Ninth Circuit, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  *Laub v. U.S. Dep't of the Interior*, 342 F.3d

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

17

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1080, 1093 (9th Cir. 2003).  Where "[f]urther discovery on [the] issue might well demonstrate facts sufficient to constitute a basis for jurisdiction" denial of jurisdictional discovery is an abuse of discretion.  *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

Here, there is no dispute that Bacardi Production is a registered GT Nexus member that connects to and uses the infringing Oakland-based GT Nexus platform.  What is known only to Bacardi Production (and possibly also GT Nexus), however, is the full extent of Bacardi Production's use of the platform, the extent of Bacardi Production's interactions with GT Nexus in Oakland, and its involvement in the GT Nexus Community for transportation planning and execution activities.  Bacardi Production has been silent on these issues, focusing instead on irrelevant matters.  Jurisdictional discovery stands to confirm that Bacardi Production is a highly active member of the GT Nexus Community that makes extensive use of the Oakland-based GT Nexus Platform to ship spirits it makes into California and other states.  Such evidence will belie any suggestion that Bacardi Production lacks the requisite minimum contacts.

In addition, further discovery is likely to confirm Bacardi Production's separate corporate status is a mere formality and that, as a production arm for Bacardi spirits, its business interests are one and the same with the dominant Bacardi entity and affiliated companies.  Indeed, Bacardi's own website urges that the Bacardi entities, including it production arms, should be thought of collectively, as a "group," not individuals.  Lyons Decl. Ex. 5 ("Bacardi Limited refers to the Bacardi group of companies . . . ."), Ex. 2 ("The Company operates 27 production facilities, including bottling, distilling, and manufacturing facilities, located in 16 countries including Puerto Rico, Scotland, Italy, France, Spain, Germany and Mexico.").  Taken together, there is no dispute that the Bacardi group has continuous and systematic business contacts throughout the United States, including California, approximating a physical presence that is more than sufficient to establish general jurisdiction.  *Id*. ("Added with other Bacardi operations in the United States, Bacardi employs more than 1,200 people in 34 states and Puerto Rico.")  Thus, if the Court decides that more evidence is needed, jurisdictional discovery should be allowed.  *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n24 (9th Cir. 1977) ("[D]iscovery has

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

18

INTTRA'S OPPOSITION TO BACARDI'S
MOTION TO DISMISS; 4:11-CV-02145-SBA

1  been allowed, for example, where there was a question as to whether jurisdiction could be

2  established over an alien corporation through the employment of another as agent.").

3       Accordingly, to the extent the Court finds jurisdictional discovery warranted, INTTRA

4  should be permitted leave to serve document requests and interrogatories relating to jurisdictional

5  issues on Bacardi Production and also GT Nexus, and to conduct two 30(b)(6) depositions of

6  knowledgeable witnesses.  *See, e.g., Forouhar v. Asa*, No. 10-3623, 2011 WL 4080862 (J.

7  Armstrong, N.D. Cal. Sept 13, 2011) (granting plaintiff sixty (60) days leave to conduct

8  jurisdictional discovery entailing document requests, interrogatories, and a 30(b)(6) deposition);

9  *Martinez v. Aero Caribbean*, No. 11-3194, 2012 WL 258658, *4 (N.D. Cal. Jan. 27, 2012)

10  (permitting plaintiff to engage in jurisdictional discovery consisting of (1) ten reasonably narrow

11  document requests, (2) ten reasonably narrow interrogatories, and (3) two depositions not to last

12  longer than seven hours each).

13  **V.     CONCLUSION**

14       For the foregoing reasons, INTTRA respectfully requests that the Court deny Bacardi

15  Production's motion.

16

17  Dated: February 13, 2012                    Respectfully submitted,

18                                              MORGAN, LEWIS & BOCKIUS LLP

19

20                                              By  /s/ Michael J. Lyons
                                                   _____
21                                                 Michael J. Lyons
                                                   Attorneys for Defendant and Counter-
22                                                 Plaintiff INTTRA, INC.

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 22965849.1

19