1  STEFANI E. SHANBERG, State Bar No. 206717
   ROBIN L. BREWER, State Bar No. 253686
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  One Market Plaza
   Spear Tower, Suite 3300
4  San Francisco, California  94105-1126
   Telephone:  (415) 947-2000
5  Facsimile:  (415) 947-2099
   E-Mail:     sshanberg@wsgr.com
6              rbrewer@wsgr.com

7  Attorneys for Plaintiff and
   Counter-Defendant GT NEXUS, INC.

8

9

10                 **UNITED STATES DISTRICT COURT**

11                **NORTHERN DISTRICT OF CALIFORNIA**

12                       **OAKLAND DIVISION**

13

14  GT NEXUS, INC.,                      Case No. 4:11-cv-02145-SBA
    a Delaware corporation,
15                                       **GT NEXUS, INC.'S OPPOSITION TO**
                    Plaintiff,           **INTTRA, INC.'S MOTION TO LIFT**
16                                       **STAY AND REOPEN ACTION**
             v.
17
    INTTRA INC.,
18  a Delaware corporation,              Date:    March 25, 2014
                                         Time:    1:00 p.m.
19                  Defendant.           Place:   Courtroom 1
    ───────────────────────────         Judge:   Hon. Saundra Brown Armstrong
20
    AND RELATED CROSS-ACTION.
21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I. FACTUAL BACKGROUND ...................................................................................2

    A. Procedural History.....................................................................................2

    B. While the case was stayed, CBM review became available and the
        Supreme Court granted certiorari in *CLS Bank*.......................................3

II. ARGUMENT ......................................................................................................4

    A. The INTTRA Patents Claim Ineligible Subject Matter Under
        35 U.S.C. § 101 and Are "Covered Business Method Patents."...........................4

    B. The Proceedings Before the PTO Are Ongoing and the Stay Should
        Be Maintained in View of GT Nexus' CBM Petitions. ...........................6

        1. A stay will simplify the issues and streamline further
            litigation. ...............................................................................7

        2. The lawsuit is at an early stage, which weighs in favor of
            a stay...........................................................................................8

        3. A stay will not unduly prejudice INTTRA, or provide
            GT Nexus with any tactical advantage in the litigation. ...............9

        4. A stay will "reduce the burden of litigation on the parties
            and on the court." .........................................................................10

    C. The Stay Should Also Be Maintained Because Case Law Relating to
        Patent-Eligible Subject Matter is Unsettled. .......................................10

III. CONCLUSION ...............................................................................................11

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3
## CASES

4
*Accenture Global Svcs. GmbH v. Guidewire Software, Inc.*,
   No. 2011-1486, slip op. (Fed. Cir. Sep. 5, 2013) ........................................................ 5

5

6
*Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Canada*,
   687 F.3d 1266 (Fed. Cir. 2012) ..................................................................................... 5

7
*Bascom Research LLC v. Facebook, Inc.*,
   No. 3:12-cv-06294 (N.D. Cal. Jan. 13, 2014) ............................................................. 11

8

9
*Bilski v. Kappos*,
   130 S. Ct. 3218 (2010) ................................................................................................... 5

10
*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
   717 F.3d 1269, 1273 (Fed. Cir. 2013), *cert. granted*, 134 S. Ct. 734 (U.S.

11
   2013) .............................................................................................................................. 4

12
*CLS Bank Int'l v. Alice Corp. Pty.*,
   717 F.3d 1269 (Fed. Cir. May 10, 2013) (*en banc*) ................................................. 5, 6

13

14
*Credit Acceptance Corp. v. Westlake Servs., Inc. LLC*,
   No. 2:13-cv-1523 (C.D. Cal. Dec. 30, 2013) ....................................................... 10, 11

15
*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ..................................................................................... 5

16

17
*Data Distribution Tech., LLC v. Brer Affiliates, Inc.*,
   No. 1:12-cv-4878 (D.N.J. Jan. 15, 2014) .................................................................... 11

18
*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013) ..................................................................................... 8

19

20
*Gioello Enters. Ltd. v. Mattel, Inc.*,
   No. C.A. 99-375 GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001) ............................... 9

21
*Intertainer, Inc. v. Hulu, LLC*,
   No. 2:13-cv-5499 (C.D. Cal. Jan. 24, 2014) ................................................................. 7

22

23
*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ..................................................................................................... 11

24
*Mayo v. Prometheus*,
   132 S. Ct. 1289 (2012) ................................................................................................... 5

25

26
*Mkt.-Alerts Pty. Ltd v. Bloomberg Fin. L.P.*,
   922 F. Supp. 2d 486 (D. Del. 2013) ...................................................................... 6, 7, 8

27
*Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Illinois*,
   No. 1:10-cv-01370, 2013 WL 1662952 (N.D. Ohio Apr. 17, 2013) .............. 3, 6, 9, 10

28
*The Money Suite Co. v. 21st Century Ins.*,
   No. 1:13-cv-00984 (D. Del. Jan. 9, 2014) ................................................................... 11

*Zillow v. Trulia*,
    No. 2:12-cv-01549, 2013 WL 5530573 (W.D. Wash. Oct. 7, 2013) ................................ passim

**STATUTES**

35 U.S.C.
    § 101 ........................................................................................................... 1, 3, 5, 10
    § 102 ........................................................................................................................ 3
    § 103 ........................................................................................................................ 3
    § 321 ........................................................................................................................ 3

**OTHER AUTHORITIES**

157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) ........................................................... 1

157 Cong. Rec. S5432 (daily ed. Sept. 8, 2011) ......................................................... 7

Leahy-Smith America Invents Act
    Section 18 ............................................................................................................ 3, 6

Memorandum from Andrew H. Hirshfeld, Deputy Commissioner for Patent
    Examination Policy to Patent Examining Corps (May 13, 2013) ............................... 1

Transitional Program for Covered Business Method Patents—Definitions of
    Covered Business Method Patent and Technological Invention,
    77 Fed. Reg. 48,735 (Aug. 14, 2012) ..................................................................... 7

1

**TABLE OF ABBREVIATIONS**

2

3
Leahy-Smith America Invents Act ................................................... AIA

4

5
Declaration of Robin L. Brewer in support of GT Nexus,
Inc.'s Opposition to INTTRA Inc.'s Motion to Lift the Stay ......................... Brewer Decl.

6

7
Covered Business Method Patent Review ....................................... CBM

8
GT Nexus, Inc. ...................................................................... GT Nexus

9

10
INTTRA Inc. ........................................................................ INNTRA

11

12
INTTRA Inc.s' Motion to Lift the Stay and Reopen Action .......................... Motion

13
Patent Trial and Appeal Board ......................................................... PTAB

14

15
United States Patent and Trademark Office....................................... PTO

16

17

18

19

20

21

22

23

24

25

26

27

28

1        Lifting the stay in this case would unnecessarily waste the Court's and parties' resources.

2    The claims of the patents-in-suit cover abstract ideas and, consequently, are directed to

3    unpatentable subject matter.  The proceedings before the PTO are continuing.  GT Nexus has

4    filed CBM petitions against all four patents.  In describing the purpose of CBMs, Congress

5    noted, "[t]hat way bad patents can be knocked out in an efficient administrative proceeding,

6    avoiding costly litigation."  157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of Sen.

7    Schumer).  The CBM process did not exist at the time GT Nexus initiated this lawsuit and filed

8    the *ex parte* reexaminations.  Unlike *ex parte* reexaminations, the CBM petitions specifically

9    address the invalidity of the patents under 35 U.S.C. § 101, a significant issue in this case, and

10    thus will likely be a more relevant process.  Moreover, CBMs are required to be completed

11    within a year of institution of the trial.

12        Should the Court decide to lift the stay, GT Nexus intends to file a dispositive motion on

13    the grounds the patents-in-suit are invalid for claiming unpatentable subject matter under 35

14    U.S.C. § 101.  The law on this issue is currently in flux following the Federal Circuit's highly

15    fractured decision in *CLS Bank Int'l v. Alice Corp. Pty. Ltd.* and the Supreme Court's resulting

16    grant of *certiorari*. [1]  The Supreme Court's decision in *Alice Corp. Pty. Ltd v. CLS Bank Int'l*

17    should offer significant guidance to the parties and the Court as to the patentability of the claims

18    of the patents-in-suit.  Other Courts, including in this District, faced with similar situations

19    issued stays pending a decision from the Supreme Court.  Given the likelihood that the claims

20    will be amended or cancelled and the current uncertainty surrounding patent-eligible subject

21    matter, it would be premature to lift the stay in this case.

22        Moreover, INTTRA will not suffer any undue prejudice as a result of maintaining the

23    stay in this case.  INTTRA waited almost a year after issuance of the patents before attempting to

24    use them for leverage in ongoing negotiations with GT Nexus regarding a business alliance.

25

---

26       [1] In comparison, the PTO has clear guidelines for determining patent-eligibility and issued
guidance to its patent examining corps following the Federal Circuit's *CLS Bank* opinion, stating

27    "there is **no change** in examination procedure for evaluating subject matter eligibility."
Memorandum from Andrew H. Hirshfeld, Deputy Commissioner for Patent Examination Policy

28    to Patent Examining Corps (May 13, 2013) (emphasis in original), Brewer Decl., Ex. A.

Unwilling to succumb to INTTRA's threats, GT Nexus filed this declaratory judgment. INTTRA then **stipulated** to stay this case in view of the pending *ex parte* reexaminations. INNTRA has never requested preliminary injunctive relief or indicated any intention to do so. Considering its previous actions, INTTRA's arguments of undue prejudice ring hollow. Moreover, delay from the stay pending a decision from the PTO does not constitute undue prejudice. *See Zillow v. Trulia*, No. 2:12-cv-01549, 2013 WL 5530573, *6 (W.D. Wash. Oct. 7, 2013).

Accordingly, to avoid any waste of the Court's and parties' resources, GT Nexus respectfully requests that the Court deny INTTRA's motion to lift the stay.[2]

## I.   FACTUAL BACKGROUND

### A.   Procedural History

Between July and November of 2010, the PTO issued four patents to INTTRA, all of which are asserted in this lawsuit.[3]  All four patents generally relate to "[a]n on-line system and method for buyers and sellers of international container transportation services," and cover computer-implemented methods for coordinating containerized shipping.  (Dkt. 1, Exhs. A-D.)

INTTRA waited almost a year after the first of the patents-in-suit issued before it threatened GT Nexus to either license the patents-in-suit or face litigation.  INTTRA's threat was part of ongoing business discussions during which INTTRA tried to coerce GT Nexus into a business alliance.  (Dkt. 1, ¶¶ 13-14.)   Because of INTTRA's threats, GT Nexus filed a complaint on May 2, 2011, seeking a declaratory judgment that the patents are invalid and not infringed.  (Dkt. 1.)  After filing two requests for extensions of time, INTTRA answered the complaint and filed counterclaims for infringement against GT Nexus and seven of its customers.

---

[2] INTTRA has suggested that it is improper for GT Nexus to oppose its motion and should instead bring a separate motion to stay.  It is within the Court's discretion to decide whether to grant or lift a stay.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  GT Nexus is of course willing to provide additional briefing on this issue, should the Court so request.

[3] The patents-in-suit are U.S. Patent Nos. 7,752,142 ("the '142 patent"); 7,756,794 ("the '794 patent"); 7,761,387 ("the '387 patent"); and 7,827,119 ("the '119 patent") (collectively, "the patents-in-suit").

1   (Dkt. 11, 18, 20.)  At no point has INTTRA sought preliminary injunctive relief or indicated any

2   intent to do so.  Because INTTRA had problems serving all of the defendants named in its

3   counterclaims, the initial case management conference was repeatedly continued and was

4   ultimately set for February 23, 2012.  (Dkt. 26, 44, 52.)

5          Before the Court held the initial case management conference, GT Nexus filed requests

6   with the PTO for *ex parte* reexamination of all four patents-in-suit, asserting invalidity for lack

7   of novelty and for obviousness (under 35 U.S.C. §§ 102, 103).  Shortly thereafter, GT Nexus and

8   INTTRA stipulated to stay the case.  (Dkt. 58.)  The Court entered an order staying this case on

9   February 21, 2012.  (Dkt. 61.)  The last of the patents-in-suit emerged from reexamination on

10  November 26, 2013.  On February 18, 2013, GT Nexus filed petitions for CBM review on the

11  patents-in-suit.  *See* Brewer Decl., Exs. B-E.

12         At present, the litigation remains at a very early stage.  The parties have not exchanged

13  infringement or invalidity contentions, and no discovery has been taken or requested.  *See*

14  Brewer Decl. ¶ 3.  The only motion filed in this action is Counter-Defendant Bacardi-Martini

15  Production's motion to dismiss for lack of personal jurisdiction, which has not been fully briefed.

16  (Dkt. 53, 55, 60.)  Should the litigation recommence, however, GT Nexus intends to file a

17  dispositive motion attacking the patentability of the patents-in-suit under 35 U.S.C. § 101.  *See*

18  Brewer Decl. ¶ 4.

19         **B.      Recent Legal Developments**

20         While the reexamination petitions were pending and this case was stayed, there were two

21  significant developments.  First, on September 16, 2012, the Transitional Program for Covered

22  Business Methods embodied in section 18 of the Leahy-Smith America Invents Act and 35

23  U.S.C. § 321 took effect.  That program allows parties to litigation to challenge the validity of

24  software and business method patents on multiple grounds, including section 101 patentability.

25  *Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Illinois*, No. 1:10-cv-01370, 2013 WL 1662952,

26  *2 (N.D. Ohio Apr. 17, 2013).  As a result, after the four INTTRA patents emerged from

27  reexamination, GT Nexus filed petitions with the Patent Trial and Appeal Board seeking CBM

28  review of all claims of all four patents-in-suit on grounds of section 101 invalidity.  *See* Brewer

1   Decl., Exs. B-E.  The PTAB should decide whether to institute a trial by August 18, 2014, and if

2   a trial is instituted, the PTAB should issue a final decision by August 18, 2015.

3         Second, on May 10, 2013, the United States Court of Appeals for the Federal Circuit

4   issued its highly fractured *en banc* opinion in *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, in which

5   all judges agreed that the computer implemented system and method claims at issue were drawn

6   to ineligible subject matter under 35 U.S.C. § 101, but no opinion garnered a majority as to the

7   basis for that result.  717 F.3d 1269, 1273 (Fed. Cir. 2013), *cert. granted*, 134 S. Ct. 734 (U.S.

8   2013).  On December 6, the United States Supreme Court granted *certiorari* in *Alice Corp. Pty.*

9   *Ltd v. CLS Bank Int'l* to answer the following question: "[w]hether claims to computer-

10  implemented inventions—including claims to systems and machines, processes, and items of

11  manufacture—are directed to patent-eligible subject matter within the meaning of 35 U.S.C. §

12  101 as interpreted by this Court?"  No. 13-298, *cert. granted* (U.S. Dec. 6, 2013).  The Supreme

13  Court is expected to reach a decision in the *Alice Corp.* appeal by June of 2014.

14  **II.     ARGUMENT**

15        The Court should deny INTTRA's motion to lift the stay in this case.  GT Nexus has filed

16  CBM petitions with the PTO that will simplify the issues in this litigation and reduce the burden

17  on the Court without unduly prejudicing INTTRA.  Moreover, case law relating to patentable

18  subject matter, a significant issue in this case, is in flux.  The Supreme Court's decision in *Alice*

19  *Corp.* in June should provide guidance on this matter.

20        **A.     The INTTRA Patents Claim Ineligible Subject Matter Under 35 U.S.C. § 101
              and Are "Covered Business Method Patents."**

21

22        The claims of the patents-in-suit cover abstract ideas.  Specifically, the claims relate to

23  various systems and methods for (1) booking shipping requests through a third party aggregator

24  and (2) using a server-based database for shipment information.  The claims do nothing more

25  than automate existing practices, including the role of the freight forwarder and the provision of

26  tracking and tracing information.

27        The patents describe a freight forwarder as someone who coordinates the transportation

28  of goods on behalf of shippers.  Dkt. 1, Ex. A, '142 patent at 1:50-51.  As explained in the

1    background section of the patents, a shipper will contract directly with multiple carriers to set

2    shipping rates.  *Id.* at 1:15-18.  Once the shipper has a container to ship, the shipper will serially

3    contact carriers with whom it has contracted to check availability and determine which carrier to

4    use to transport the goods.  *Id.* at 1:24-36.  A shipper will sometimes use a freight forwarder to

5    coordinate the transportation of goods with the various carriers on behalf of the shipper,

6    performing the task of serially contacting carriers.  *Id.* at 1:49-59.  Carriers also already provide

7    shippers with tracking and tracing information.  In fact, "[i]t is not uncommon for carriers to

8    devote an entire workgroup to handling phone calls from shippers requiring information on the

9    location of their goods."  *Id.* at 2:24-26.

10    While the Supreme Court has held that patent eligibility under 35 U.S.C. § 101 is not

11    subject to a bright-line test, it is clear that abstract ideas are patent-ineligible.  *See*, e.g., *Bilski v.*

12    *Kappos*, 130 S. Ct. 3218, 3231 (2010); *Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of*

13    *Canada*, 687 F.3d 1266, 1281 (Fed. Cir. 2012); *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d

14    1269, 1292 (Fed. Cir. May 10, 2013) (*en banc*).  Claims must contain sufficient limitations so as

15    to not be a "drafting effort designed to monopolize [an abstract idea] itself."  *See Mayo v.*

16    *Prometheus*, 132 S. Ct. 1289, 1297 (2012).  "[S]imply appending generic computer functionality

17    to lend speed or efficiency to the performance of an otherwise abstract concept does not

18    meaningfully limit claim scope for purposes of patent eligibility."  *CLS Bank*, 717 F.3d at 1286;

19    *see also Accenture Global Svcs. GmbH v. Guidewire Software, Inc.*, No. 2011-1486, slip op. at

20    16 (Fed. Cir. Sep. 5, 2013).

21    The Federal Circuit has held that neither "collection and organization of data" in a

22    database nor "manipulation or reorganization of data" meets the transformation prong of the

23    machine or transformation test, and that "data-gathering steps cannot alone confer patentability,"

24    "even if some physical steps are required to obtain information from the database (e.g., entering

25    a query via a keyboard, clicking a mouse)."  *CyberSource Corp. v. Retail Decisions, Inc.*, 654

26    F.3d 1366, 1370-75 (Fed. Cir. 2011).  And "[t]o salvage an otherwise patent-ineligible process, a

27    computer must be integral to the claimed invention, facilitating the process in a way that a person

28    / / /

1    making calculations or computations could not," and not just accelerating the calculation or

2    performing the process more efficiently.  *CLS Bancorp*, 687 F.3d at 1278.

3         In short, the claims of the patents offer nothing more than the automation and aggregation

4    through use of computers and servers of methods that people and companies manually

5    performed—via phone, email, and other means of communication—for many decades before

6    INTTRA filed the applications and are drawn to abstract mental processes.  Accordingly, the

7    patents are invalid under current case law.

8         **B.     The Proceedings Before the PTO Are Ongoing and the Stay Should Be
             Maintained in View of GT Nexus' CBM Petitions.**

9

10        GT Nexus recently filed CBM petitions on the patents-in-suit.  The policy underlying the

11   CBM process favors maintaining the stay.  In fact, statements from the Act's legislative history

12   indicate that the AIA was "designed to provide a cheaper, faster alternative to district court

13   litigation . . ." and that the AIA "places a very heavy thumb on the scale in favor of a stay being

14   granted."  *Progressive*, 2013 WL 1662952 at *3; *Zillow*, 2013 WL 5530573 at *3, n.1.

15        Under section 18 of the AIA, parties to litigation involving infringement of a "covered

16   business method patent" may seek post-grant review to challenge the patent's validity before the

17   PTAB.  *Zillow*, 2013 WL 5530573 at *3; *Progressive*, 2013 WL 1662952 at *2.  "The AIA asks

18   district courts to decide whether a stay should be granted based on a four-factor test:

19        (1)  whether a stay, or the denial thereof, will simplify the issues in question and
                streamline the trial;

20        (2)  whether discovery is complete and whether a trial date has been set;

21        (3)  whether a stay, or the denial thereof, would unduly prejudice the nonmoving
                party or present a clear tactical advantage for the moving party; and

22        (4)  whether a stay, or the denial thereof, will reduce the burden of litigation on
                the parties and on the court.

23   *Progressive*, 2013 WL 1662952 at *2 (citing AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331

24   (2011)).  Congress expressly included the fourth factor of this test "in order to ease the movant's

25   task in demonstrating a need for a stay" and "to increase the likelihood that the court will grant a

26   stay when a party initiates a transitional CBM review, as opposed to an ordinary PTO

27   reexamination."  *Mkt.-Alerts Pty. Ltd v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489 (D. Del.

28   2013); *Zillow*, 2013 WL 5530573 at *3.

The patents-in-suit are the type of "covered business method" patents that were meant to be challenged by way of the AIA's transitional program.  The patents squarely fall within the scope of patents subject to challenge as provided for by statute and interpreted by the PTO.  *See* Transitional Program for Covered Business Method Patents—Definitions of Covered Business Method Patent and Technological Invention, 77 Fed. Reg. 48,735-36 (Aug. 14, 2012) (citing 157 Cong. Rec. S5432 (daily ed. Sept. 8, 2011)).  Further, all four patents issued under Class 705 of the United States Classification System, and according to the PTO, "patents subject to covered business method patent review are anticipated to be typically classifiable in Class 705."  *Mkt.-Alerts*, 922 F. Supp. 2d at 492, n.9.

In view of GT Nexus' CBM petitions and the public policy favoring stays for patents undergoing post-grant review, the Court should maintain the stay in this case.  Further, as addressed in detail below, all four factors used to address stays of litigation for CBM proceedings favor maintaining the stay in this case.

### 1.      A stay will simplify the issues and streamline further litigation.

GT Nexus' CBM petitions challenge the patentability of all claims of all four patents-in-suit, and so there are no claims or patents-in-suit here that will not be impacted, in some way, by the PTAB's review.  *Intertainer, Inc. v. Hulu, LLC*, No. 2:13-cv-5499, Dkt. 29 at 3 (C.D. Cal. Jan. 24, 2014).  And while statistics for CBM review are not yet available, statistics for *inter partes* reexamination indicate that the PTO grants ninety-three percent of requests for reexamination, and as a result of the proceeding, issues certificates in which all claims are cancelled in thirty-one percent of cases, or certificates in which the claims are amended in sixty-one percent of cases.  *See* Brewer Decl., Ex. F.  Assuming statistics for CBM review will be similar,[4] it is extremely likely that the PTAB's ultimate review of INTTRA's patent will result in either cancelled or amended claims.  *Zillow*, 2013 WL 5530573 at *4 ("*inter partes* reexamination is the proceeding most similar to CBM review . . . and other courts have relied upon these

---

[4] Rates of cancellation should be higher in CBM review given the expanded grounds for review and the legislative history indicating that patents in class 705 are of dubious patentability.

1    same statistics when considering stays pending CBM review").  As a result, it is likely that this

2    case will be disposed of in its entirety, or the claim language and claim construction positions of

3    both parties will be altered moving forward.  *See id.*; *Fresenius USA, Inc. v. Baxter Int'l, Inc.*,

4    721 F.3d 1330, 1340 (Fed. Cir. 2013) ("if a claim is cancelled or amended to cure invalidity [by

5    the PTO], the patentee's cause of action is extinguished and the suit fails").  That the claims are

6    likely to change as part of the CBM proceedings has been demonstrated by the *ex parte*

7    reexaminations in which claims were amended and claims were added for three of the four

8    patents-in-suit.  *See* Hoffman Decl. (Dkt. 65-1), Exs. C-E.

9         Maintaining the current stay pending disposition of the petitions for CBM review of the

10   patents-in-suit will simplify the issues and streamline further litigation as it is possible that the

11   petitions for CBM review will dispose this case in its entirety.  If the INTTRA patents survive

12   CBM review, this Court will benefit from the PTO's expertise and analysis from the record for

13   the CBM review.  In addition, GT Nexis will be estopped from litigating any arguments made

14   before the PTAB, and INTTRA will be estopped by any concessions or arguments made during

15   the CBM review.

16         **2.     The lawsuit is at an early stage, which weighs in favor of a stay.**

17         "The present case remains at a very early stage, a factor which strongly weighs in favor

18   of maintaining the stay, as the parties have not exchanged infringement or invalidity contentions,

19   and no discovery has been taken or requested.  *See Mkt.-Alerts*, 922 F. Supp. 2d at 494.

20         The two cases INTTRA cites in its motion to lift the stay are inapposite.  *See* Motion at 3.

21   Instead INTTRA asserts, without factual support, that "a further stay stands to increase the risk

22   of losing evidence or having witnesses' memories fade."  *Id.*  Yet INTTRA identifies no such

23   evidence or witnesses.  Nor does INTTRA explain how this hypothetical possibility outweighs

24   the very real risk that the parties and the Court will waste resources in discovery and claim

25   construction while *Alice Corp.* and the CBM petitions remain pending.  Contrary to INTTRA's

26   speculation about witnesses and evidence, maintaining the stay will advance "judicial efficiency"

27   and "'maximize the likelihood that neither the Court . . . nor the parties expend their assets

28   / / /

addressing invalid claims.'" *Progressive*, 2013 WL 1662952 at *5 (citing *Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340 at *2 (D. Del. Jan. 29, 2001)).

### 3. A stay will not unduly prejudice INTTRA, or provide GT Nexus with any tactical advantage in the litigation.

All stays delay litigation, and therefore cause some prejudice to the patent holder. The "salient question posed by the third factor," however, is not whether INTTRA will be prejudiced, but whether INTTRA will be "unduly prejudiced." *Progressive*, 2013 WL 1662952 at *6-7 (granting a second stay pending CBM review after granting a first stay pending *ex parte* reexamination).

Despite being competitors, INTTRA's actions in this case belie any undue prejudice. In the Motion, INTTRA claims it will be prejudiced by the delay in its ability to request an injunction in this case, but INTTRA has not requested any preliminary injunctive relief, or expressed an intent to do so. This fact counter-balances any hypothetical prejudice caused by the delays and suggests that monetary remedies are sufficient to compensate INTTRA for any alleged injury in this case. *See Zillow*, 2013 WL 5530573 at *7 ("[m]any courts have found . . . that attempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief").

Further, INTTRA waited almost a year after issuance of the first patent before threatening GT Nexus in an attempt to leverage its patents in ongoing business discussions in which INTTRA tried to coerce GT Nexus into a business alliance. (Dkt. 1, ¶¶ 13-14.) In addition, INTTRA did not even file this lawsuit; GT Nexus did. Once brought into court, INTTRA then sought two extensions before responding to the complaint, and then stipulated to the initial stay. As a result, INTTRA's "prior lack of urgency in this matter belies its insistence that the litigation move forward with all dispatch now." *Zillow*, 2013 WL 5530573 at *7. The competitive relationship between the parties therefore does not weigh in favor of lifting the stay.

/ / /

/ / /

/ / /

**4.      A stay will "reduce the burden of litigation on the parties and on the court."**

Maintaining the stay will unquestionably relieve the Court of "having to expend substantial judicial resources in deciding claim construction, non-infringement, and invalidity issues before those claims are invalidated, narrowed, or refined through CMB [sic] review." *Progressive*, 2013 WL 1662952 at *8; *Zillow*, 2013 WL 5530573 at *8.  The CBM petitions filed by GT Nexus address all of the claims in the patents-in-suit.  GT Nexus' petitions also contain grounds for invalidity under 35 U.S.C. § 101 as being directed to unpatentable subject matter.

Further, if the INTTRA patents survive CBM review and litigation recommences, the Court benefits from the PTO's expertise and analysis and the record of the CBM review narrows the issues presented in the case.  Moving forward after the proceeding, GT Nexus will be estopped from re-litigating any arguments made before the PTAB, and INTTRA will be similarly estopped by any concessions and arguments it makes in order to survive CBM review. *Progressive*, 2013 WL 1662952 at *5 ("Of importance is that, as a result of the CBM review, the scope and substance of the issues before the Court will be refined.").

**C.      The Stay Should Also Be Maintained Because Case Law Relating to Patent-Eligible Subject Matter is Unsettled.**

GT Nexus intends to file a dispositive motion on the grounds that the claims are invalid for claiming unpatentable subject matter under 35 U.S.C. § 101 if the stay is lifted.  *See* Brewer Decl., ¶ 4.  As discussed above, the claims of the patents-in-suit are directed at abstract ideas and, under current case law, are invalid.  The Supreme Court is expected to provide guidance on this subject in its opinion in *Alice Corp.*, which should issue by June 2014.  Lifting the stay "would require the Court to venture into unsettled legal territory, complicating the analysis of this case" in order to respond to GT Nexus' arguments regarding whether INTTRA's patents claim ineligible subject matter under 35 U.S.C. § 101.  *Credit Acceptance Corp. v. Westlake Servs., Inc. LLC*, No. 2:13-cv-1523, Dkt. 67 at 4-5 (C.D. Cal. Dec. 30, 2013).

Federal courts possess the inherent power to maintain stays "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

1   *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936).   Recently, several courts have stayed cases

2   involving alleged infringement of software patents pending Supreme Court review in *Alice Corp*.

3   *Bascom Research LLC v. Facebook, Inc.,* No. 3:12-cv-06294, Dkt. 133 at 2 (N.D. Cal. Jan. 13,

4   2014) (Illston, J.); *Data Distribution Tech., LLC v. Brer Affiliates, Inc.*, No. 1:12-cv-4878, Dkt.

5   52 at 6 (D.N.J. Jan. 15, 2014); *The Money Suite Co. v. 21st Century Ins.*, No. 1:13-cv-00984, Dkt

6   16 at 4 (D. Del. Jan. 9, 2014).

7          Maintaining the stay "giv[es] the Supreme Court an opportunity to weigh in on the proper

8   test for determining whether a claim is unpatentable as an abstract idea [and] reduces the chances

9   that any decision by this Court on that issue will need to be reconsidered in light of the pending

10   decision." *Credit Acceptance*, No. 2:13-cv-1523, Dkt. 67 at 7; *Bascom Research,* No. 3:12-cv-

11   06294, Dkt. 133 at 2.   Absent a continuing stay, the Court may expend considerable resources

12   over the coming months to learn the asserted patents and construe the disputed claim terms, only

13   to see those efforts prove futile immediately after completing them.   For example, the Court may

14   need to construe additional terms, or construe terms again, if the Supreme Court articulates a

15   new test for patentability.   Maintaining the stay will alleviate this potential burden and conserve

16   judicial resources, while also allowing the Supreme Court an opportunity to provide guidance on

17   35 U.S.C. § 101 issues.

18   **III.     CONCLUSION**

19          For these reasons, GT Nexus respectfully requests that the Court deny INTTRA's motion

20   to lift the stay in these proceedings.

21

22   Dated:  February 18, 2014                    WILSON SONSINI GOODRICH & ROSATI
                                                  Professional Corporation
23

24                                               By:_____/s/ *Robin L. Brewer*_____
25                                                       Robin L. Brewer

26                                               Attorneys for Plaintiff and
                                                 Counter-Defendant GT NEXUS, INC.
27

28