UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GT NEXUS, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>INTTRA, INC., a Delaware corporation,<br><br>　　　　Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No: C 11-02145-SBA<br><br>**ORDER DENYING MOTION TO LIFT THE STAY AND REOPEN THE ACTION**<br><br>Docket 63, 65, 69 |

　　　　Plaintiff GT Nexus, Inc. ("GT Nexus") brings the instant action against Inttra, Inc. ("Inttra") seeking a declaratory judgment that four of Inttra's patents ("patents-in-suit")[1] are invalid and have not been infringed. Inttra has filed counterclaims against GT Nexus for infringement of the patents-in-suit. On February 22, 2012, the instant action was stayed and administratively closed pending the outcome of GT Nexus's requests for *ex parte* reexamination of the patents-in-suit by the United States Patent and Trademark Office ("PTO"). Dkt. 61. Thereafter, the PTO granted GT Nexus's requests for *ex parte* reexamination. The parties are presently before the Court on Inttra's motion to lift the stay and reopen the action. Dkt. 65. GT Nexus opposes the motion. Dkt. 66. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Inttra's motion, for the reasons stated below. The Court, in its

---

[1] The patents-in-suit are U.S. Patent Nos. 7,761,387; 7,752,142; 7,827,119; and 7,756,794.

discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. DISCUSSION

### A. Administrative Motion for Leave to File Sur-Reply

GT Nexus requests leave to file a sur-reply "to address certain evidence and arguments raised for the first time in [Inttra's] reply brief in support of its motion to lift stay and reopen action."  Dkt. 69.  If a party raises a new argument or presents new evidence in a reply brief, a court may consider these matters only if the adverse party is given an opportunity to respond.  See El Pollo Loco v. Hashim, 316 F.3d 1032, 1040-1041 (9th Cir. 2003); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996).  Here, because it is undisputed that Inttra's reply brief contains new legal argument and new evidence, GT Nexus's administrative motion to file a sur-reply is GRANTED.

### B. Motion to Lift the Stay and Reopen the Action

In the instant motion, Inttra moves to lift the stay and reopen this action on the ground that the *ex parte* reexamination proceedings before the PTO have been completed.  In response, GT Nexus contends that the stay should not be lifted because it has filed petitions with the Patent Trial and Appeal Board ("PTAB") seeking review of the validity of Inttra's covered business method ("CBM") patents[2] ("CBM review").  Specifically, GT Nexus's petitions challenge the validity of every claim of the patents-in-suit.  According to GT Nexus, the patents-in-suit are invalid because they claim unpatentable subject matter.  GT Nexus argues that the stay should not be lifted while proceedings before the PTO are ongoing.[3]

///

---

[2] A CBM patent is "a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions."  P.L. 112-29, 125 Stat. 284, 331 (2011).

[3] It is undisputed that the PTAB has yet to determine whether to grant review of GT Nexus's petitions for CBM review.  A decision by the PTAB as to whether to grant CBM review is expected by August 2014.

### 1. The Leahy–Smith America Invents Act

Section 18 of the Leahy–Smith America Invents Act ("AIA") created a new transitional program authorizing persons or entities who have been sued for infringing a CBM patent to petition the PTAB for post-grant review of the validity of the patent. AIA § 18(a)(1), P.L. 112-29, 125 Stat. 284, 329-330.[4] Under the AIA, a party may seek to stay a patent infringement action in federal district court where a "transitional proceeding for that patent" has been instituted. AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331. The AIA provides that courts should apply a four-factor test ("AIA Factors") when deciding whether to stay a case pending CBM review. Id. These four factors are: (1) "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial"; (2) "whether discovery is complete and whether a trial date has been set"; (3) "whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party"; and (4) "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." Id.

This test resembles the one that courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination by the PTO. See In re Ameranth Patent Litigation Cases, 2013 WL 7144380, at *1 (S.D. Cal. 2013). The primary difference between this test and the one employed by courts in the ordinary patent reexamination context is the inclusion of the fourth factor, which requires a court to consider whether a stay will reduce the burden of litigation. Id. The fourth factor was added in order to ease the movant's task in demonstrating the need for a stay. See Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P., 922 F.Supp.2d 486, 489-490, 496 n. 14 (D. Del. 2013) (noting that § 18 of the AIA was added through an amendment proposed by Senator Charles Schumer, who, during Congressional debate on the AIA, stated that "the four factor test . . . places a very heavy thumb on the scale in favor of a stay being granted," and that "[s]ince

---

[4] Although the AIA was signed into law on September 16, 2011, the CBM review component was not implemented until September 16, 2012. Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Ill., 2013 WL 1662952, at *2 (N.D. Ohio 2013).

the entire purpose of the transitional program at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a scenario in which a district court would not issue a stay"); Zillow, Inc. v. Trulia, Inc., 2013 WL 5530573, at *3 (W.D. Wash. 2011) ("the four-factor test was designed to increase the likelihood that the court will grant a stay when a party initiates a transitional CBM review, as opposed to an ordinary PTO reexamination").

### 2. The AIA Factors

As an initial matter, Inttra argues that the four-factor test does not apply because the patents-in-suit do not qualify for CBM review. The Court rejects this argument. The statutory stay analysis under the AIA is triggered upon the filing of a petition for CBM review, not upon the granting of a petition for CBM review by the PTAB. See Zillow, 2013 WL 5530573 at *4 n. 3 ("The statutorily required stay analysis set forth in § 18(b) of the AIA is triggered by a party's petition for post-grant review and not upon the PTAB's institution of such review."); Market-Alerts Pty., 922 F.Supp.2d at 490, n. 5 ("Since the PTO has recognized that 'the [CBM review] *proceedings* begin with the filing of a petition,' the court finds that the relevant stay provisions apply when the petition is first filed.") (italics in original); Sightsounds Techs., LLC v. Apple, Inc., 2013 WL 2457284, at *3 (W.D. Pa. 2013) ("[T]he relevant stay provisions of the AIA apply when the petition for review is filed, and not when the PTAB institutes such review."). Moreover, the question of whether a patent qualifies for CBM review is an issue for the PTAB to decide.[5] See Zillow, 2013 WL 5530573 at *4 n. 3 ("Whether CBM review should be granted . . . is an issue for the PTAB to evaluate and not for this court."); Landmark Technology, LLC v. iRobot Corporation, 2014 WL 486836, at *3 (E.D. Tex. 2014) ("The threshold issue of whether CBM review . . . is appropriate is typically an issue for the PTAB to decide, not th[e] Court."). Accordingly, the Court will apply the four-factor test set forth in § 18(b) of the AIA.

---

[5] The PTAB "may institute a transitional proceeding only for a patent that is a covered business method patent." AIA § 18(a)(1)(E), P.L. 112-29, 125 Stat. 284, 331.

### a. Simplification of the Issues and Trial

The first factor examines "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial." As explained by the Federal Circuit in the reexamination context: "[o]ne purpose of the reexamination procedure is to eliminate trial of [an] issue (when [a] claim is canceled) or to facilitate trial . . . by providing the district court with the expert view of the . . . PTO . . . when a claim survives the reexamination proceeding." Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983).

Here, GT Nexus contends that maintaining the stay pending completion of CBM review will simplify the issues and streamline the litigation because its CBM petitions challenge the patentability of every claim of the patents-in-suit, and because it is likely that the PTAB will grant the petitions and cancel or modify one or more of the claims of the patents-in-suit. In support of its position, GT Nexus cites to statistics for *inter partes* reexamination, which indicate that the PTO grants 93% of requests for reexamination, and that *inter partes* reexamination requests result in the cancellation of all claims 31% of the time and changes in claims 61% of the time. See Brewer Decl., Exh. F, Dkt. 66-2. While PTO statistics do not exist for CBM review, courts have relied upon statistics for *inter partes* reexamination when considering stays pending CBM review. See e.g., Zillow, 2013 WL 5530573 at *4 ("CBM review is so new that no PTO statistics exist for it yet. *Inter partes* reexamination is the proceeding most similar to CBM review, however, and other courts have relied upon these same statistics when considering stays pending CBM review."); see also Market-Alerts Pty., 922 F.Supp.2d at 491 n. 7.

The Court finds that the first AIA factor weighs in favor of a stay. If the PTAB grants CBM review and finds that one or more of the asserted claims of the patents-in-suit are invalid or subject to modification, the Court will have wasted judicial resources and the parties will have unnecessarily expended funds addressing invalid claims or claims modified during CBM review. See Ho Keung Tse v. Apple Inc., 2007 WL 2904279, at *4 (N.D. Cal. 2007) (Armstrong, J.); Fresenius USA, Inc. v. Baxter Intern., Inc., 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[I]f a claim is cancelled or amended to cure invalidity [by the

1 PTO], the patentee's cause of action is extinguished and the suit fails."). On the other hand,
2 if the PTAB upholds the validity of the asserted claims, GT Nexus will be estopped from
3 raising any invalidity arguments that it raised in the CBM review proceedings. AIA §
4 18(a)(1)(D), P.L. 112-29, 125 Stat. 284, 330. Moreover, even if some of the claims of the
5 patents-in-suit survive CBM review, the PTAB's expert opinion will provide guidance for
6 the Court on the pertinent issues. Therefore, it is likely that CBM review will at least
7 streamline this case, thereby conserving the resources of the parties and promoting the
8 interests of judicial economy. Furthermore, the granting of a stay will avoid the possibility
9 of inconsistent results. See Microsoft Corp. v. Tivo Inc., 2011 WL 1748428, at *5 (N.D.
10 Cal. 2011) (noting that since it is possible that this Court and the PTO could reach
11 inconsistent conclusions regarding the same patent, there is a significant concern of wasting
12 resources by proceeding forward) (quotation marks omitted).

### b. Stage of the Litigation

The second factor considers "whether discovery is complete and whether a trial date has been set." There is a liberal policy in favor of granting motions to stay proceedings pending reexamination of a patent, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery. Yodlee, Inc. v. Ablaise Ltd., 2009 WL 112857, at *2 (N.D. Cal. 2009) (Armstrong, J.). Here, the parties' joint stipulation to stay the case pending the outcome of GT Nexus's *ex parte* reexamination requests states: "The parties believe that a stay would further the interests of judicial economy and conservation of the parties' and the Court's resources. This case is in its early stages and the requested stay would not impact the case schedule: the Court has not yet conducted an initial Case Management Conference . . ., no trial date or other Court deadlines have been set, discovery has not yet commenced, and the only matter noticed for hearing . . . [a] Motion to Dismiss for Lack of Personal Jurisdiction . . . has not been fully briefed and is not scheduled to be heard by this Court until May 1, 2012." Dkt. 59. Accordingly, because the instant action was stayed at an early stage in the litigation, the Court finds that the second AIA factor weighs in favor of maintaining the stay. See Ho

- 6 -

1  Keung Tse, 2007 WL 2904279, at *2-3. ("A stay is particularly appropriate for cases in the
2  initial stages of litigation or in which there has been little discovery."); KLA–Tencor Corp.
3  v. Nanometrics, Inc., 2006 WL 708661, at *2 (N.D. Cal. 2006) (granting stay where
4  discovery had just begun); Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 1995 WL
5  20470, at *2 (N.D. Cal. 1995) (holding that the absence of significant discovery or
6  substantial expense and time invested in the litigation weighed in favor of stay); ASCII
7  Corp. v. STD Entm't USA, Inc., 844 F.Supp. 1378, 1381 (N.D. Cal. 1994) (granting stay
8  where the parties had undertaken little or no discovery).

### c. Prejudice and Tactical Concerns

The third factor examines "whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party." "It should be noted that 'delay inherent in the reexamination process does not constitute, by itself, undue prejudice.' " AT & T Intellectual Property I v. Tivo, Inc., 774 F.Supp.2d 1049, 1054 (N.D. Cal. 2011) (Armstrong, J.) ("Because delay inherent in the reexamination process does not constitute undue prejudice, courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent."). "Moreover, parties having protection under the patent statutory framework may not 'complain of the rights afforded to others by that same statutory framework.' " Id.

Here, Inttra contends that the stay should be lifted because GT Nexus's efforts to delay this litigation are "purely" for tactical reasons. Inttra asserts that GT Nexus's more than one-year delay in seeking CBM review after the review procedures went into effect "was plainly intended to maximize the amount of delay in this case and prejudice Inttra." In response, GT Nexus argues that it has not engaged in dilatory tactics to gain a tactical advantage. In support of its position, GT Nexus notes that the last of the asserted patents "emerged" from *ex parte* reexamination on November 26, 2013,[6] and that it moved expeditiously in preparing and filing its petitions for CBM review less than three months

---

[6] See Hsu-Hoffman Decl. ¶ 6, Exh. D, Dkt. 65-1, 65-2.

1 later. See Brewer Decl. ¶¶ 5-8, Exhs. B-E. According to GT Nexus, it would have been
2 premature to file petitions for CBM review while the *ex parte* proceedings were still
3 pending when it was unclear what claims of the patents-in-suit, if any, would need to be
4 addressed through CBM review.

5       The Court finds that the third AIA factor weighs in favor of a stay. Inttra has not
6 demonstrated that the additional delay from a stay of the instant action during the pendency
7 of CBM review will cause it to suffer any undue prejudice. Indeed, Inttra does not
8 specifically argue that it will suffer undue prejudice from further delay. Instead, without
9 elaboration, Inttra simply asserts that "further delay greatly disfavors [Inttra] because [GT
10 Nexus] is using Inttra's patented technology without authorization to compete directly
11 against Inttra in the marketplace." While Inttra may suffer some prejudice from a delay of
12 this litigation, Inttra's showing does not support a finding of undue prejudice.[7] Inttra, for
13 instance, has not shown why monetary damages would be inadequate to remedy any
14 prejudice occasioned by the delay. Further, Inttra has not adduced any evidence
15 demonstrating that GT Nexus filed petitions for CBM review as a dilatory tactic. The
16 evidence in the record shows that GT Nexus filed petitions for CBM review less than three
17 months after the last *ex parte* reexamination certificate was issued.

### d. Burden of Litigation

19       The final factor considers "whether a stay, or the denial thereof, will reduce the
20 burden of litigation on the parties and on the court." As noted above, the fourth factor was
21 established to increase the likelihood that a stay will be granted. Zillow, 2013 WL 5530573

---

[7] The Court notes that Inttra did not seek preliminary injunctive relief prior to the imposition of the stay. Nor has Inttra asserted that it intends to seek a preliminary injunction if the stay is lifted. "Many courts have found . . . that attempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief." See Zillow, 2013 WL 5530573 at *6. The Court further notes that Inttra failed to respond to GT Nexus's persuasive contention that its prior lack of urgency in this matter, e.g., waiting almost a year after the issuance of its first patent before attempting to leverage its patents to coerce GT Nexus into a business alliance and then stipulating to a stay of this action, belies Inttra's insistence that the litigation must move forward at this juncture. See id. at *7 ("Zillow's 'prior lack of urgency in this matter belies its insistence that the litigation move forward with all dispatch now.").

at *3 ("[T]he fourth factor was added in order to ease the movant's task in demonstrating the need for a stay.  Indeed, the four-factor test was designed to increase the likelihood that the court will grant a stay when a party initiates a transitional CBM review, as opposed to an ordinary PTO.") (citation omitted); Market Alerts Pty., 922 F.Supp.2d at 496 ("it appears the intent of [the fourth factor] was to ensure that district courts would grant stays pending CBM review proceedings at a higher rate than they have allowed stays pending *ex parte* reexaminations").

The Court finds that the fourth AIA factor weighs in favor of a stay.  If the PTAB grants CBM review, a stay will reduce the burden of litigation on the parties and the Court because it will avoid parallel proceedings concerning the validity of the patents-in-suit.  Further, if the PTAB grants CBM review, the issues in this case will be simplified upon completion of the review process.  Inttra, for its part, has not offered any compelling reason why this factor weighs against a stay.  Instead, Inttra simply asserts that the stay should be lifted because the PTAB will most likely deny CBM review.  However, given the statistics cited above, and the lack of any countervailing evidence proffered by Inttra, the Court disagrees.  The statistics proffered by GT Nexus show that it is likely that the PTAB will grant CBM review of at least one of GT Nexus's petitions and modify or cancel one or more of the claims of the patents-in-suit.

Finally, to the extent Inttra suggests that the fourth AIA factor weighs against maintaining the stay because the patents-in-suit have already undergone *ex parte* reexamination, the Court disagrees.  The PTO's *ex parte* reexamination procedure and the PTAB's CBM review procedure are different.  Therefore, the fact that the patents-in-suit have been reexamined does not militate against maintaining the stay.  See Landmark Technology, 2014 WL 486836, at *3 ("[T]he fact that the patents-in-suit have passed through reexamination does not compel the conclusion that CBM Review is superfluous.  As opposed to ex parte reexamination procedures that consider a patent's validity in light of particular prior art, CBM Review allows a petitioner to argue for invalidity before a panel of administrative law judges and also allows for § 112 challenges.").

## II. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. GT Nexus's motion for leave to file a sur-reply is GRANTED.

2. Inttra's motion to lift the stay and reopen the action is DENIED. This case shall remain STAYED pending completion of CBM review.[8] If the PTAB grants CBM review, this case shall remain stayed pending completion of the CBM review process. Upon completion of the CBM review process, the parties shall jointly submit to the Court, within two (2) weeks, a joint letter requesting that this action be reopened and a case management conference be scheduled. If GT Nexus's petitions for CBM review are denied, Inttra may file a motion requesting to lift the stay and reopen the action.

3. This Order terminates Docket Nos. 63, 65, and 69.

IT IS SO ORDERED

Dated: 7/9/2014

SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[8] The Court notes that it need not address GT Nexus's argument that the stay should be maintained pending the Supreme Court's decision in Alice Corp. Pty. Ltd. v. CLS Bank Int'l. The Supreme Court issued a decision in this case on June 19, 2014. As such, GT Nexus's argument has become moot.