1  STEFANI E. SHANBERG, State Bar No. 206717
   ROBIN L. BREWER, State Bar No. 253686
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  One Market Plaza
   Spear Tower, Suite 3300
4  San Francisco, California 94105-1126
   Telephone: (415) 947-2000
5  Facsimile: (415) 947-2099
   E-Mail:    sshanberg@wsgr.com
6             rbrewer@wsgr.com

7  Attorneys for Plaintiff and
   Counter-Defendant GT NEXUS, INC.

8

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                   OAKLAND DIVISION

13

14  GT NEXUS, INC.,                    Case No. 4:11-cv-02145-SBA
    a Delaware corporation,
15
                    Plaintiff,         **GT NEXUS, INC.'S OPPOSITION TO
16                                      INTTRA, INC.'S MOTION TO LIFT
          v.                            STAY AND REOPEN ACTION**
17
    INTTRA INC.,
18  a Delaware corporation,
                                        Date:    March 3, 2015
19                  Defendant.          Time:    1:00 p.m.
                                        Place:   Courtroom 1
20                                      Judge:   Hon. Saundra Brown Armstrong
    AND RELATED CROSS-ACTION.
21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.   FACTUAL BACKGROUND ...........................................................................................2

    A.   Procedural History...................................................................................................2

    B.   Patents-in-suit ..........................................................................................................3

    C.   CBM Review .............................................................................................................3

    D.   Proceedings at the PTAB .......................................................................................4

        1.   The PTAB's institution decisions ...........................................................4

        2.   The PTAB's termination decision ..........................................................6

II.  ARGUMENT ...............................................................................................................6

    A.   Legal Standard..........................................................................................................6

    B.   All Factors Favor Maintaining a Stay, as the CBM Review is not
        Complete. ...................................................................................................................8

        1.   A stay will simplify the issues and streamline further
            litigation. ...................................................................................................8

        2.   The lawsuit is at an early stage, which weighs in favor of a
            stay. ............................................................................................................9

        3.   A stay will not unduly prejudice INTTRA or provide GT
            Nexus with any tactical advantage in the litigation......................................9

        4.   A stay will "reduce the burden of litigation on the parties and
            on the court." .........................................................................................10

    C.   INTTRA's Argument for Lifting the Stay Must be Rejected, as GT
        Nexus Properly Appealed the PTAB's Termination Decision to the
        Federal Circuit.......................................................................................................11

    D.   The INTTRA Patents Claim Ineligible Subject Matter Under 35
        U.S.C. § 101. ..........................................................................................................12

III. CONCLUSION ........................................................................................................13

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4      *Alice Corp. Pty. Ltd v. CLS Bank Int'l.*, 573 U.S. ___, 134 S. Ct. 2347 (2014) ........................1, 12

5      *AT&T Intellectual Property I v. Tivo, Inc.*, 774 F. Supp. 2d 1049 (N.D. Cal. 2011)......................9

6      *Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266
         (Fed. Cir. 2012) ............................................................................................................12
7

*Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ............................................................................12
8

*Canady v. Erbe Elektromedizin GMBH*, 271 F. Supp. 2d 64 (D.D.C. 2002)...................................7
9

*CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146 (Fed. Cir. 1997)...............................8, 9
10

*In re Cuozzo Speed Techs., LLC*, Appeal No. 2014-1301, slip op.
         (Fed. Cir. Feb. 4, 2015) ...........................................................................................11
11

12    *Intertainer, Inc. v. Hulu, LLC*, No. 2:13-cv-5499, Dkt. No. 29 at 3
         (C.D. Cal. Jan. 24, 2014) .......................................................................................8
13

*Mkt.-Alerts Pty., Ltd v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486 (D. Del. 2013)....................7, 9
14

*Progressive Cas Ins. Co. v. Safeco Ins. Co. of Ill.*, Case Nos. 1:10-cv-01370,
15        1:11-cv-00082, 1:12-cv-01068, 1:12-cv-01070, 2013 WL 1662952
         (N.D. Ohio 2014) ................................................................................................*passim*
16

*SecureBuy LLC v. CardinalCommerce Corp.*, Case CBM2014-00035, Paper No. 12
17        (April 25, 2014) .................................................................................................6

18    *St. Jude Med., Cardiology Div. v. Volcano Corp.*, 749 F.3d 1373 (Fed. Cir. 2014)......................11

19    *Tse v. Apple, Inc.*, Case No. 4:06-cv-06573, 2013 WL 5302587
         (N.D. Cal. Sept. 19, 2013) .....................................................................................7
20

*Versata Software, Inc. v. Callidus Software, Inc.*, Case No. 2014-1468, slip op.
21        (Fed. Cir. 2014) .................................................................................................7

22    *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014)............................7

23    *Zillow*, *Inc. v. Trulia, Inc.*, No. 2:12-cv-01549, 2013 WL 5530573 (W.D. Wash.
         Oct. 7, 2013) ....................................................................................................*passim*
24

### STATUTES

25    5 U.S.C. § 702 .........................................................................................................11

26    5 U.S.C. § 704 .........................................................................................................11

27    28 U.S.C. § 1295(a)(4)(A) ............................................................................................11

28    28 U.S.C. § 1651 ......................................................................................................11

1

35 U.S.C. § 101 ................................................................................................................*passim*

35 U.S.C. § 102 ................................................................................................................2

35 U.S.C. § 103 ................................................................................................................*passim*

35 U.S.C. §112 ..................................................................................................................4

35 U.S.C. § 141(c) ............................................................................................................11

35 U.S.C. §326 ..................................................................................................................4

**MISCELLANEOUS**

157 Cong. Rec. S1053 ......................................................................................................4, 6

157 Cong. Rec. S1360 ......................................................................................................7

This motion represents INTTRA's second attempt to have the stay lifted in this litigation *before* proceedings in the Patent Office are complete. This motion should be rejected for the same reasons—and for additional reasons relating to progress before the PTAB—as INTTRA's previous motion. In sum, the PTAB instituted CBM review of all claims of all patents-in-suit after which INTTRA filed a motion to dismiss. INTTRA's motion was granted, and the PTAB's work ceased before it could be completed. GT Nexus appealed the grant of the motion to dismiss. INTTRA presents a single basis for requesting the stay be lifted: INTTRA believes GT Nexus's appeal of the termination decision is improper. INTTRA can, and presumably will, raise this objection before the Federal Circuit.

GT Nexus's appeal, however, in no way alters the grounds for maintaining the stay discussed by the Court in its previous order on this same issue. INTTRA does not address the stay factors, each one of which favors maintaining the stay. Maintaining the stay will likely further simplify the issues in this litigation. Next, this case remains at an early stage. Further, INTTRA does not argue that it will suffer undue prejudice as a result of maintaining the stay, nor can it for the reasons discussed below, including that it is INTTRA's procedural jockeying that delayed a decision on the merits in the PTAB. In addition, maintaining the stay will likely further preserve Court and party resources. The PTAB has now invested significant resources analyzing the patents-in-suit, and any duplication of efforts should be avoided.

Finally, the PTAB found that all claims of all patents-in-suit are more likely than not invalid for failing to claim patent-eligible subject matter under 35 U.S.C. § 101 and the Supreme Court's decision in *Alice Corp. Pty. Ltd v. CLS Bank Int'l. Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 573 U.S. ___, 134 S. Ct. 2347, 2354 (2014). Should the Court lift the stay, GT Nexus intends to file a dispositive motion on these grounds seeking an order completing the PTAB's work. GT Nexus respectfully requests that, should the stay be lifted, it be lifted only for the purposes of deciding such case dispositive motion, as anything further would be an egregious waste of Court and party resources.

# I.      FACTUAL BACKGROUND

## A.      Procedural History

Between July and November of 2010, the PTO issued four patents to INTTRA, all of which are asserted in this lawsuit.  INTTRA waited almost a year after the first of the patents-in-suit issued before it threatened GT Nexus with its patents as part of ongoing business discussions.  Dkt. No. 1, ¶¶ 13-14.  Because of INTTRA's threats, GT Nexus filed a complaint on May 2, 2011, seeking a declaratory judgment that the patents are invalid and not infringed.  Dkt. No. 1.  After filing two requests for extensions of time, INTTRA answered the complaint and filed counterclaims for infringement against GT Nexus and seven of its customers.  Dkt. Nos. 11, 18, 20.  At no point has INTTRA sought preliminary injunctive relief or indicated any intent to do so.  Because INTTRA had problems serving all of the defendants named in its counterclaims, the initial case management conference was repeatedly continued and was ultimately set for February 23, 2012.  Dkt. Nos. 26, 44, 52.

Before the Court held the initial case management conference, GT Nexus filed requests with the PTO for *ex parte* reexamination of all four patents-in-suit, asserting invalidity for lack of novelty and for obviousness (under 35 U.S.C. §§ 102, 103).  An *ex parte* reexamination considers a patent's validity on the basis of patents or printed publications.  Brewer Decl. at ¶ 2. The party submitting the *ex parte* reexamination request has no further involvement in the proceeding at the PTO after the request is submitted.  *Id.*  Shortly after the filing of the *ex parte* reexamination requests, GT Nexus and INTTRA stipulated to stay the case, including any appeals from the *ex parte* reexaminations.  Dkt. No. 58.  The Court entered an order staying and administratively closing this case on February 21, 2012.  Dkt. No. 61.  The last of the patents-in-suit emerged from reexamination on November 26, 2013.  INTTRA filed a motion to lift the stay on February 4, 2014.  Dkt. No. 65.  On February 18, 2014, GT Nexus filed petitions for CBM review on the patents-in-suit and opposed lifting the stay.  Dkt. No. 66, Exs. B-E.  On July 9, 2014, the Court issued an order denying INTTRA's motion to lift the stay and maintaining the administrative close of the case.  Order, Dkt. No. 71.  In the Order, the Court recognized that the procedures for *ex parte* reexamination and CBM review are different.  *See id.* at 9.

1   The litigation is at an early stage:   the parties have not exchanged infringement or

2   invalidity contentions, and no discovery has been taken or requested.   *See* Brewer Decl. at ¶ 3;

3   *see also* Dkt. No. 58 (stipulation to stay the case in which the parties agreed "this case is in the

4   early stages").   The only motion filed in this action is Counter-Defendant Bacardi-Martini

5   Production's motion to dismiss for lack of personal jurisdiction, which is not fully briefed.   Dkt.

6   Nos. 53, 55, 60.

7   **B.      Patents-in-suit**

8   The patents-in-suit generally relate to "[a]n on-line system and method for buyers and

9   sellers of international container transportation services," and cover computer-implemented

10  methods for coordinating containerized shipping.   Dkt. No. 1, Exs. A-D.   The background

11  section describes the prior art method of booking and tracking shipping containers.   Specifically,

12  a shipper contracts directly with multiple carriers to set shipping rates.   Dkt. No. 1, Ex. A, '142

13  patent at 1:15-18.   Once the shipper has a container to ship, the shipper serially contacts carriers

14  with whom it has contracted to check availability and determine which carrier to use to transport

15  the goods.   *Id.* at 1:24-36.   A shipper will sometimes use a freight forwarder to coordinate the

16  transportation of goods with the various carriers on behalf of the shipper, performing the task of

17  serially contacting carriers.   *Id.* at 1:49-59.   Carriers will provide shippers with tracking and

18  tracing information.   In fact, "[i]t is not uncommon for carriers to devote an entire workgroup to

19  handling phone calls from shippers requiring information on the location of their goods."   *Id.* at

20  2:24-26.   The claims of the patents-in-suit are directed to the automation of this process through

21  a neutral portal.

22  **C.      CBM Review**

23  Section 18 of the AIA created a new transitional program authorizing persons or entities

24  alleged of infringing a CBM patent to petition the PTAB for review of the validity of the patent.

25  AIA § 18(a)(1).   Although the AIA was signed into law on September 16, 2011, the CBM review

26  component was not implemented until September 16, 2012.   *Progressive Cas Ins. Co. v. Safeco*

27  *Ins. Co. of Ill.*, Case Nos. 1:10-cv-01370, 1:11-cv-00082, 1:12-cv-01068, 1:12-cv-01070, 2013

28  WL 1662952, at *2 (N.D. Ohio 2014).   CBM review allows a petitioner to challenge the validity

1  of software and business method patent claims "on any ground that could be raised under

2  paragraph (2) or (3) of section 282(b)," *i.e.*, 35 U.S.C. §§ 101, 102, 103, or 112.  *See* AIA §§ 18

3  and 32.  The petitioner participates as a party in the CBM review.  *See* AIA § 18(a)(1); 35 U.S.C.

4  §326.  A petitioner is estopped from raising any grounds of invalidity for which the PTAB

5  renders a final decision in a district court case.  *See* AIA § 18(a)(1)(D).

6         In enacting this procedure, Congress stated that CBM review was provided to "allow

7  companies that are the target of one of these frivolous business method patent lawsuits to go

8  back to the PTO and demonstrate, with the appropriate prior art, that the patent shouldn't have

9  been issued in the first place."  157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011), at S1053

10  (statement of Sen. Schumer).  Congress noted "[t]hat way bad patents can be knocked out in an

11  efficient administrative proceeding, avoiding costly litigation."  *Id.*

12         **D.      Proceedings at the PTAB**

13         The petitions for CBM review, filed on February 18, 2014, challenged the validity each

14  of the patents-in-suit under 35 U.S.C. §§ 101, 103, and 112, and were supported by detailed

15  expert declarations.  Brewer Decl. at ¶ 4.  The petitions and expert declarations cumulatively

16  totaled 309 and 334 pages, respectively.  *Id.*  INTTRA filed its preliminary responses to the

17  petitions on May 27, 2014, cumulatively totaling 230 pages in length.  *Id.* at ¶ 5.

18         **1.      The PTAB's institution decisions**

19         On August 12, 2014, the PTAB instituted CBM review for each of the patents-in-suit.

20  *See* Brewer Decl. at ¶ 6.  The PTAB found that every claim of the patents-in-suit is more likely

21  than not unpatentable on multiple grounds, including because they are directed to patent-

22  ineligible subject matter and in view of the prior art.  *Id.*  The PTAB did not institute review

23  under § 112.  *Id.*  The PTAB's basis for instituting review is set forth in detail in the respective

24  institution decisions for each patent-in-suit.  *See* Brewer Decl., Exs. A-D.

25         Specifically, the PTAB found that each of the claims of the patents-in-suit are directed to

26  an abstract idea.  Brewer Decl., Ex. A at 12 ("The claims of the '794 patent are directed to a

27  patent-ineligible concept: booking shipping through a third party."); *id.*, Ex. B at 16 (finding the

28  claims of the '387 patent are directed to the abstract idea of "booking a container shipment");

1    Ex. C at 18-19 (finding that the claims of the '142 patent are "directed to the abstract idea of

2    using an intermediary to manage container shipping requests and track shipment"); Ex. D at 14

3    ("The claims [of the '119 patent] are directed to a patent-ineligible concept: tracking an object

4    from point A to point B.").  The PTAB also remarked that each of the patents-in-suit is directed

5    to "a fundamental practice, long prevalent in our system of commerce."  Brewer Decl., Ex. A at

6    12 ("[B]ooking container shipments is a fundamental practice, long prevalent in our system of

7    commerce.") (citing to '794 patent at 1:9-2:10); Ex. B at 16 (same as to "the buying and selling

8    of transportation services") (citing '387 patent at 1:12-2:48); Ex. C at 19 (same as to "the

9    concept of intermediated shipping") (citing the '142 patent at 1:12-2:53); Ex. D at 14 (same as to

10   "tracking and tracing goods in transit") (citing the '119 patent at 2:10-22).

11         The PTAB then analyzed the claims to determine whether they included an "inventive

12   concept," and finding that they did not.  Brewer Decl., Ex. A at 13 (rejecting Patent Owner's

13   arguments that the claims of the '794 patent recite meaningful limitations, stating: "We would

14   reasonably expect almost any e-commerce system to provide a user interface with templates for

15   data entry by a user.  Similarly, we would expect almost any e-commerce system to employ

16   computer storage, servers, and data transmission."); Ex. B at 17-18 (finding that "the system [of

17   the '387 patent] does no more than perform generic computer functions to automate previously

18   well-known manual tasks."); Ex. D at 15 (same as to the '119 patent and further commenting that

19   the '119 patent "merely takes the kind of shipment information that was previously tracked

20   manually, stores that information in a generic database, and permits users to retrieve the stored

21   information using generic computer database query techniques."); Ex. C at 20 (finding that the

22   limitations of the '142 patent are nothing more "than well-understood, routine, conventional

23   activities previously known to the industry.").  The PTAB further remarked "that a person of

24   ordinary skill in the art would understand that storing, searching, matching, retrieving matched

25   data, and then outputting matched data is a generic capability of any digital computer installed

26   with database software."  *Id.*, Ex. B at 18, Fn. 8; Ex. D at 15, Fn. 8.  The PTAB, therefore,

27   determined that it was more likely than not that claims of the patents-in-suit be unpatentable

28   under 35 U.S.C. § 101 as being drawn to patent-ineligible subject matter.  *Id*, Ex. A at 13-14; Ex.

B at 18; Ex. C at 21-22; Ex. D at 15-16.

The PTAB further analyzed each of the prior art grounds presented and determined that the claims are also more likely than not invalid under 35 U.S.C. § 103 in view of the prior art. *Id.*, Ex. A at 21; Ex. B at 26; Ex. C at 29, 31; Ex. D at 22-23.

At the same time as the institution decisions, the PTAB issued scheduling orders, setting an oral hearing for April 22, 2015. *Id.* at ¶ 11. The deadline for the PTAB to issue its final written decisions was August 12, 2015. *Id.*

## 2.      The PTAB's termination decision

On October 17, 2014, INTTRA filed a motion to dismiss on the grounds that CBM review was statutorily barred based upon the PTAB's *SecureBuy* decision. Brewer Decl. at ¶ 12; *see also SecureBuy LLC v. CardinalCommerce Corp.*, Case CBM2014-00035, Paper No. 12 (April 25, 2014). GT Nexus responded on October 31, 2014, arguing waiver and the propriety of the CBM reviews in view of the statute and the Director's rules governing CBM review. *Id.* at ¶ 13. INTTRA filed a reply on November 11, 2014. *Id.* at ¶ 14. On December 10, 2014, the PTAB issued a decision terminating the CBM reviews. *Id.* at ¶ 15. GT Nexus filed its notices of appeal to the Federal Circuit on January 9, 2015. *Id.*, Ex. E-H. The deadline for the Patent Office to transfer the record to the Federal Circuit is February 18, 2015, at which point the Federal Circuit will docket the appeal. *Id.* at ¶ 17. It is projected that briefing will be completed in June and oral arguments will be scheduled for early fall 2015. *Id.*

## II.      ARGUMENT

### A.      Legal Standard

The AIA was "designed to provide a cheaper, faster alternative to district court litigation" and to "place[] a very heavy thumb on the scale in favor of a stay being granted." *Progressive*, 2013 WL 1662952, at *3; *Zillow, Inc. v. Trulia, Inc.*, No. 2:12-cv-01549, 2013 WL 5530573, at *3 (W.D. Wash. Oct. 7, 2013). Congress explained that "it is nearly impossible to imagine a scenario in which a district court would not issue a stay" pending CBM review. 157 Cong. Rec. S1053, at S1053 (statement of Sen. Schumer). Denial of stay would require "an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related

to stays pending reexamination." 157 Cong. Rec. S1360, at S1364 (statement of Sen. Schumer). In fact, the Federal Circuit has reversed district courts under AIA Section 18(b)(2) providing interlocutory appeal of any denial of a stay motion pending CBM review. *See Versata Software, Inc. v. Callidus Software, Inc.*, Case No. 2014-1468, slip op. at *passim*, (Fed. Cir. 2014) (reversing denial of stay and finding that all four factors strongly favored a stay) ("Callidus Software"); *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1320 (Fed. Cir. 2014) (finding that three of four factors weighed heavily in favor of a stay and fourth factor relating to undue prejudice weighed slightly in favor of denying a stay where parties were competitors and patent owner had argued it would lose market share and consumer goodwill, but had failed to seek a preliminary injunction).

Section 18 of the AIA sets forth the four-factor test to be used in deciding a stay motion:

    (1)  whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
    (2)  whether discovery is complete and whether a trial date has been set;
    (3)  whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
    (4)  whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Order at 3 (citing AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331 (2011)). Congress expressly included the fourth factor in order "to ease the movant's task of demonstrating the need for a stay" and "to increase the likelihood that the court will grant a stay when a party initiates a transitional CBM review, as opposed to an ordinary PTO reexamination." *Mkt.-Alerts Pty., Ltd v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489-90 (D. Del. 2013); *Zillow*, 2013 WL 5530573, at *3 n.1.

"A district court has discretion to lift a stay of litigation." *Tse v. Apple, Inc.*, Case No. 4:06-cv-06573, 2013 WL 5302587, at 2 (N.D. Cal. Sept. 19, 2013) (Armstrong, J.) (citing *Canady v. Erbe Elektromedizin GMBH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002)). A lift of the stay is appropriate if the circumstances supporting the stay have changed. *See id.*; *see also Canady*, 271 F. Supp. 2d at 74 ("When circumstances have changed such that the Court's reasons for imposing the stay no longer exists or are inappropriate, the court may lift the stay.").

**B.     All Factors Favor Maintaining a Stay, as the CBM Review is not Complete.**

There has been no change in circumstances that warrants lifting the stay and, as before, all of the factors support maintaining the stay.

**1.     A stay will simplify the issues and streamline further litigation.**

The PTAB already determined that it is more likely than not that all of the claims of the patents-in-suit are invalid as directed to patent-ineligible subject matter and in view of the prior art, so all claims of the patents-in-suit will be impacted, in some way, by the PTAB's complete review.  *See Intertainer, Inc. v. Hulu, LLC*, No. 2:13-cv-5499, Dkt. No. 29 at 3 (C.D. Cal. Jan. 24, 2014).  Further, while the Court has already benefitted from the PTAB's expert opinion in the institution decisions, the Court could receive additional benefit should the PTAB be permitted to complete the CBM reviews.  *See Zillow*, 2013 WL 5530573 at *4.  There is also a significant chance the claims will be found unpatentable in any continued reexamination of the patents-in-suit.  For instituted proceedings, PTAB trials resulted in cancellation (whether by PTAB decision or patent owner disclaimer) of 496 out of 507 challenged claims, or 98%.  Brewer Decl. at ¶ 18.

Moreover, this Court has already found that CBM review will simplify the issues and that this factor weighs in favor of maintaining the stay.  Order at 5-6.  Specifically, this Court found that if the PTAB "finds that one or more of the asserted claims of the patents-in-suit are invalid or subject to modification, the Court will have wasted judicial resources and the parties will have unnecessarily expended funds addressing invalid claims or claims modified during CBM review."  *Id.* at 5.  The Court further agreed that the case would be streamlined if the PTAB upholds the validity of any of the claims because GT Nexus will be estopped from raising any invalidity arguments raised in the CBM review proceedings.  *Id.* at 6.  Similarly, INTTRA will be estopped by any concessions or arguments made during the CBM review.  *See CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997).  Finally, the Court found that it would benefit from the PTAB's expert opinion should any of the claims survive CBM review.  *Id.*  The Court, therefore, concluded that "it is likely that CBM review will at least streamline this case, thereby conserving the resources of the parties and promoting the interests of judicial

1   economy.  Furthermore, the granting of a stay will avoid the possibility of inconsistent results."

2   *Id.*  These considerations remain, and this factor strongly favors maintaining the stay in view of

3   the extensive work already done by the PTAB to determine that all claims of the patents-in-suit

4   are more likely than not invalid.

5                    **2.      The lawsuit is at an early stage, which weighs in favor of a stay.**

6          The present case remains at a very early stage, a factor which strongly weighs in favor of

7   maintaining the stay, as the parties have not exchanged infringement or invalidity contentions,

8   and no discovery has been taken or requested.  *See Mkt.-Alerts*, 922 F. Supp. 2d at 494.  In

9   denying INTTRA's previous motion to lift the stay, the Court analyzed the stage of the case at

10  the time of the parties' stipulation to stay the case and concluded that "because the instant action

11  was stayed at an early stage in the litigation, the Court finds that the second AIA factor weighs in

12  favor of maintaining the stay."  Order at 6.  This factor remains unchanged and, accordingly,

13  favors maintaining the stay.

14                   **3.      A stay will not unduly prejudice INTTRA or provide GT Nexus with
                             any tactical advantage in the litigation.**
15

16         The "salient question posed by the third factor" is not whether INTTRA will be

17  prejudiced, but whether INTTRA will be "unduly prejudiced."  *Progressive*, 2013 WL 1662952

18  at \*6-7 (granting a second stay pending CBM review after granting a first stay pending *ex parte*

19  reexamination).  "It should be noted that 'delay inherent in the reexamination process does not

20  constitute, by itself, undue prejudice.'"  *AT&T Intellectual Property I v. Tivo, Inc.*, 774 F. Supp.

21  2d 1049, 1054 (N.D. Cal. 2011) (Armstrong, J.).

22         As a threshold matter, INTTRA did not argue it would be prejudiced, much less unduly

23  prejudiced, if the Court maintains the stay.  Further, INTTRA's actions in this case belie any

24  undue prejudice.   INTTRA waited almost a year after issuance of the first patent before

25  threatening GT Nexus with its patents during business discussions.  Dkt. No. 1, ¶¶ 13-14.  In

26  addition, GT Nexus filed this lawsuit, not INTTRA.  Dkt. No. 1.  INTTRA then sought two

27  extensions before responding to the complaint and stipulated to the initial stay, including any

28  appeals. Dkt. Nos. 11, 18, 58.  Further, the latest delay of a decision on the merits is entirely of

1   INTTRA's own making.  INTTRA opted to bring an untimely motion to dismiss rather than

2   address the CBM reviews on the merits.  Whereas the final written decision for the CBM reviews

3   from the PTAB was supposed to have issued by August 12, 2015, oral arguments for the appeal

4   will likely not be heard until at least September with an order issuing a few months later.  Brewer

5   Decl. at ¶¶ 11, 17.  INTTRA cannot now claim undue prejudice as a result of its own delay.

6          In analyzing INTTRA's previous effort to lift the stay, this Court found that INTTRA had

7   not demonstrated that additional delay from a stay pending CBM review would cause it to suffer

8   under prejudice.  Order at 8.  In fact, the Court recognized that INTTRA did not specifically

9   argue that it would suffer undue prejudice from further delay in its previous motion, nor did

10  INTTRA show that monetary damages would be inadequate to remedy any prejudice occasioned

11  by delay.  *Id.*  Accordingly, as before, this factor favors maintaining the stay.

12                    **4.    A stay will "reduce the burden of litigation on the parties and on the
                              court."**

13

14         The CBM reviews address all of the claims in the patents-in-suit, and review was

15  instituted under both § 101 and § 103.  Brewer Decl., Ex. A-D.  Through its institution decisions,

16  the PTAB has already provided guidance for the Court relating to the patents-in-suit should the

17  litigation proceed, but the better result would be for the PTAB to be permitted to complete its

18  review.  Maintaining the stay pending the appeal and any subsequent PTAB proceeding ensures

19  this Court will not unnecessarily "expend substantial judicial resources in deciding claim

20  construction, non-infringement, and invalidity issues before those claims are invalidated,

21  narrowed, or refined through CMB [sic] review."  *Progressive*, 2013 WL 1662952 at *8; *Zillow*,

22  2013 WL 5530573 at *8.  In its previous Order, this Court found that "a stay will reduce the

23  burden of litigation on the parties and the Court because it will avoid parallel proceedings

24  concerning the validity of the patents-in-suit."  Order at 9.  This remains true in view of the

25  PTAB's institution of the CBM reviews and the current appeal.  Accordingly, this factor also

26  favors maintaining the stay.

27

28

**C.   INTTRA's Argument for Lifting the Stay Must be Rejected, as GT Nexus Properly Appealed the PTAB's Termination Decision to the Federal Circuit.**

INTTRA's sole argument is based upon the illogical conclusion that the PTAB's termination decision qualifies as an institution decision because there was no final written decision and it vacated the institution decisions.  Motion at 3.  Based on this false premise, INTTRA then relies upon cases in which the Federal Circuit has analyzed whether it has jurisdiction to review institution decisions.  Motion at 3-4.  These cases are inapplicable as GT Nexus appeals the termination of the CBM proceedings, not the institution.  Put simply, there are two parts of each CBM review: "institution" and "conduct."  *See, e.g.*, *St. Jude Med., Cardiology Div. v. Volcano Corp.*, 749 F.3d 1373, 1374 (Fed. Cir. 2014).  Appeals to the Federal Circuit are not available for "institution."  *Id.*  Here, the CBM reviews were instituted and in the "conduct" portion of the proceedings, and appeal is appropriate.

Further, INTTRA's argument only relates to one of several grounds for appeal raised by GT Nexus.  Should the Federal Circuit determine it does not have jurisdiction under 35 U.S.C. § 141(c) as INTTRA argues, GT Nexus also appealed under 28 U.S.C. § 1295(a)(4)(A), 28 U.S.C. § 1651, and/or 5 U.S.C. §§ 702 and 704.  Section 1295(a)(4)(A) provides the Federal Circuit has jurisdiction "of an appeal from a decision of the Patent Trial and Appeal Board of the United States Patent and Trademark Office with respect to a patent application, derivation proceeding, reexamination, post-grant review, or inter partes review under title 35, at the instance of a party who exercised that party's right to participate in the applicable proceeding before or appeal to the Board" and provides a clear right to appeal the termination decision, which qualifies as a decision of the PTAB.  Section 1651 relates to writs or mandamus, which the Federal Circuit has recently indicated appropriate for certain institution decisions.  *See In re Cuozzo Speed Techs., LLC*, Appeal No. 2014-1301, slip op. at 9 (Fed. Cir. Feb. 4, 2015).  Sections 702 and 704 permit review of agency actions, including judicial review for a legal wrong resulting from an agency action and a "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review."  5 U.S.C. §§ 702 and 704.

In short, INTTRA's objections are unfounded and GT Nexus is not barred from appealing

1   the PTAB's decision terminating the CBM reviews.  INTTRA can, and presumably will, raise its

2   objections before the Federal Circuit.  Such objections form no basis for lifting the stay in this

3   litigation, and INTTRA's motion should be denied.

4       **D.      The INTTRA Patents Claim Ineligible Subject Matter Under 35 U.S.C.
            § 101.**

5

6       Abstract ideas are patent-ineligible.  *See, e.g.*, *Alice*, 134 S. Ct. at 2354; *Bilski v. Kappos*,

7   130 S. Ct. 3218, 3231 (2010); *Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Canada*, 687

8   F.3d 1266, 1281 (Fed. Cir. 2012).  The PTAB already concluded that each of the patents-in-suit

9   is directed to an abstract idea.  *See* Brewer Decl., Ex. A at 12 (finding '794 patent is directed to

10  abstract idea of "booking shipping through a third party"); Ex. B at 16 (finding '387 patent is

11  directed to abstract idea of "booking a container shipment"); Ex. C at 18-19 (finding '142 patent

12  is directed to abstract idea of "using an intermediary to manage container shipping requests and

13  track shipment"); Ex. D at 14 (finding '119 patent is directed to abstract idea of "tracking an

14  object from point A to point B").  The PTAB went on to determine that the claims do not include

15  an inventive step and do nothing more than automate existing practices, including the role of the

16  freight forwarder and the provision of tracking and tracing information.  *See, e.g.*, *id.*, Ex. D at

17  15 ("The system does no more than perform generic computer functions to automate previously

18  well-known manual tasks.  In other words, it merely takes the kind of shipment information that

19  was previously tracked manually, stores that information in a generic database, and permits users

20  to retrieve the stored information using generic computer database query techniques.") (internal

21  citations omitted).

22      Should the Court elect to lift the stay, the stay should be lifted only for the purposes of a

23  dispositive motion of invalidity on the grounds that the patents-in-suit are invalid as directed to

24  patent-ineligible subject matter.  In other words, should the stay be lifted, GT Nexus respectfully

25  requests this Court complete the work started by the PTAB, and GT Nexus maintains that any

26  other litigation activity pending this determination would be a waste of Court and party

27  resources.

28

1    **III.     CONCLUSION**

2          For these reasons, GT Nexus respectfully requests that the Court deny INTTRA's motion

3    to lift the stay in these proceedings.

4

5    Dated:  February 10, 2015                                  WILSON SONSINI GOODRICH & ROSATI
                                                                Professional Corporation
6

7
                                                                By:_____/s/ *Robin L. Brewer*_____
8                                                                          Robin L. Brewer

9                                                               Attorneys for Plaintiff and
                                                                Counter-Defendant GT NEXUS, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28