UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GT NEXUS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>INTTRA, INC., a Delaware corporation,<br><br>    Defendant. | Case No:  C 11-02145-SBA<br><br>**ORDER GRANTING GT NEXUS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| AND RELATED COUNTERCLAIMS. | |

   Defendant INTTRA, Inc. ("INTTRA") owns four patents for software directed to the booking and tracking of cargo shipping containers.  Plaintiff GT Nexus, Inc. ("GT Nexus") filed the instant action for declaratory relief regarding the invalidity and non-infringement of the four INTTRA patents.  Dkt. 1.  In response, INTTRA filed a counterclaim for patent infringement against GT Nexus and several of GT Nexus' customers.  Dkt. 20.

   The parties are presently before the Court on GT Nexus' Motion for Judgment on the Pleadings.  Dkt. 79.  INTTRA opposes the motion.  Dkt. 89.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS GT Nexus' motion, for the reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I.  BACKGROUND

   This action centers on four patents, each entitled "Common Carrier System," assigned to INTTRA: U.S. Patent Nos. 7,756,794 ("the '794 patent"); 7,761,387 ("the '387 patent"); 7,752,142 ("the '142 patent"); and 7,827,119 ("the '119 patent") (collectively,

"the patents-in-suit").  The '387, '142, and '119 patents are divisional applications of the '794 patent, and share substantially the same specification.[1]  According to the specification, "shipping goods is a complicated business."  '794 patent, col.1, l.1.  Shippers typically contract with multiple carriers, requiring familiarity with each carrier's individual platform.  Id., ll.36-47.  Alternatively, shippers may hire a freight forwarder to coordinate with carriers on their behalf.  Id., ll.48-61.  These industry practices lead to inefficiency and increased costs.  Id., ll.58-61.

In view of the foregoing, the patents-in-suit declare the need for "a more efficient system" of procuring and managing shipping services.  '794 patent, col.2, ll.46-48.  To that end, the patents-in-suit generally disclose "[a]n on-line system and method for buyers and sellers of international container transportation services."  Id., abstract.  The patented common carrier system offers domestic and international shippers a single third-party portal for booking container shipment requests with multiple carriers.  Id., col.2, ll.52-61.  The common carrier system also offers "track and trace" and "event notification" functionality.  Id.  The infrastructure that performs the claimed system and method is a computer network of user terminals, carrier terminals, and the "common carrier system," itself comprised of servers and databases.  Id., col.4, l.11 to col.5, l.7; figs. 1A-1B.

In May 2011, GT Nexus initiated the instant action for declaratory relief regarding the invalidity and non-infringement of the patents-in-suit.  GT Nexus alleges, among other things, that the patents-in-suit are invalid because they fail to satisfy the conditions and requirements for patentability set forth in 35 U.S.C. § 101 ("Section 101").  INTTRA filed an answer to the complaint and counterclaims for patent infringement against GT Nexus and several of GT Nexus' customers.[2]  INTTRA alleges that the patents-in-suit are valid and enforceable, and that GT Nexus has infringed one or more of the claims thereof.

---

[1]  Citations to the specification refer to the '794 patent, Dkt. 79-4.

[2] Specifically, INTTRA filed counterclaims against Crowley Maritime Corporation; Crowley Liner Services, Inc.; Independent Container Line, Ltd.; Seaboard Marine, Ltd., Inc.; Sea Star Line, LLC; Turkon Lines America, Inc.; and Bacardi-Martini Production.

Subsequent to the filing of this action, GT Nexus filed requests with the United States Patent and Trademark Office ("PTO") for ex parte reexamination of the patents-in-suit based on obviousness and lack of novelty. The patents-in-suit survived reexamination, which concluded in November 2013. Thereafter, GT Nexus filed petitions with the Patent Trial and Appeal Board ("PTAB") for covered business method ("CBM") review of the patents-in-suit. In August 2014, PTAB instituted CMB review, finding that the patents are "more likely than not . . . unpatentable" because they embrace patent-ineligible subject matter. Dkt. 74-3 to 74-6. In October 2014, INTTRA moved to dismiss CBM review as procedurally barred under 35 U.S.C. § 325(a)(1). Pursuant to 35 U.S.C. § 325(a)(1), "[a] post-grant review may not be instituted . . . if, before the date on which the petition for such review is filed, the petitioner or real party in interest filed a civil action challenging the validity of a claim of the patent." In December 2014, PTAB terminated CBM review and vacated its prior orders instituting such proceedings.[3]

In March 2015, the Court lifted the stay previously entered in this action pending resolution of the PTO and PTAB proceedings. On April 10, 2015, GT Nexus filed the instant motion, arguing that the patents-in-suit are invalid under Section 101.[4] On May 1, 2015, INTTRA filed its opposition, arguing that GT Nexus fails to demonstrate the invalidity of the patents-in-suit. On May 13, 2015, GT Nexus filed its reply.

---

[3] The parties disagree as to whether the Court may take judicial notice of the PTAB orders instituting CMB review. Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, the Court may, and does, take judicial notice of the PTAB filings, including the fact that PTAB instituted CMB review. See VirtualAgility Inc. v. Salesforce.com, Inc., 759 F.3d 1307, 1312-13 (Fed. Cir. 2014) (courts may take judicial notice of PTAB filings) (citing Genentech, Inc. v. Chiron Corp., 112 F.3d 495, 497, n.1 (Fed. Cir. 1997) (same)); see e.g., Versata Software, Inc. v. Callidus Software, Inc., 771 F.3d 1368, 1372 (Fed. Cir. 2014) (taking judicial notice of the fact that PTAB instituted CMB review). However, the Court does not "defer" to PTAB's initial determination that the patents-in-suit are more likely than not unpatentable. Opp'n at 14. Rather, the Court considers the patentability issue de novo based on the parties' arguments and applicable precedent.

[4] Although GT Nexus initially filed copies of the patents-in-suit as attachments to the complaint, GT Nexus filed additional copies of the patents-in-suit with the ex parte reexamination certificates as attachments to the instant motion. Citations to the patents refer to the documents attached to the instant motion, Dkt. 79-3 to 79-6. Because the patents were modified as a result of ex parte reexamination, citations will be made both to the patents (e.g., " '794 patent") and the reexamination certifications (e.g., '387 cert.").

1  **II.      LEGAL STANDARD**

2      "After the pleadings are closed—but early enough not to delay trial—a party may

3  move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  In ruling on such a motion,

4  the court may consider the pleadings, documents attached to or incorporated by reference in

5  the pleadings, and matters of judicial notice.  United States v. Ritchie, 342 F.3d 903, 908

6  (9th Cir. 2003).  The court must accept as true the allegations of the non-moving party, and

7  assume as false any allegations of the moving party that have been denied.  Hal Roach

8  Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989).  Judgment on

9  the pleadings is proper when there is no issue of material fact in dispute and the moving

10  party is entitled to judgment as a matter of law.  Compton Unified Sch. Dist. v. Addison,

11  598 F.3d 1181, 1185 (9th Cir. 2010).[5]

12      A court may determine whether patent claims satisfy Section 101's conditions and

13  requirements for patentability on a motion for judgment on the pleadings.  See buySAFE,

14  Inc. v. Google, Inc., 765 F.3d 1350, 1351 (Fed. Cir. 2014) (affirming a determination of

15  patent invalidity under Section 101 on a motion for judgment on the pleadings); see also

16  Open Text S.A. v. Box, Inc., 2015 WL 269036, at *2 (N.D. Cal. Jan. 20, 2015) (granting a

17  motion for judgment on the pleadings based on a determination that the patent was invalid

18  under Section 101).  Where practicable, the court may examine the issue of patentability

19  without claim construction.  See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of

20  Canada (U.S.), 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("claim construction is not an

21  inviolable prerequisite to a validity determination under § 101"); see, e.g., Bilski v. Kappos,

22  561 U.S. 593 (2010) (finding patent invalid under Section 101 without claim construction).

23  _____

24      [5]  Although INTTRA presents extrinsic evidence, it does not explicitly request that
   the Court convert the motion into one for summary judgment.  See Fed. R. Civ. P. 12(d)

25  ("If, on a motion under Rules 12(b)(6) or 12(c), matters outside the pleadings are presented
   to and not excluded by the court, the motion must be treated as one for summary judgment

26  under Rule 56.").  Given that the legal issue presented lends itself to resolution without
   resort to extrinsic evidence, the Court exercises its discretion to exclude matters outside the

27  pleadings and treat the motion as one brought under Rule 12(c).  See Yakima Valley Mem'l
   Hosp. v. Washington State Dep't of Health, 654 F.3d 919, 925 (9th Cir. 2011) (a district

28  court enjoys the discretion to convert a motion for judgment on the pleadings into a motion
   for summary judgment, or to decline to do so and exclude extrinsic evidence).

III.   **DISCUSSION**

GT Nexus contends the patents-in-suit fail to satisfy the conditions and requirements for patentability set forth in Section 101.  Specifically, GT Nexus argues that the patents-in-suit embrace a patent-ineligible abstract idea, i.e., booking and tracing shipping containers through a third party.  GT Nexus further argues that the patents-in-suit lack the inventive concept necessary to transform them into a patent-eligible application.  According to GT Nexus, the patents-in-suit merely automate a fundamental business practice long prevalent in our system of commerce.  As will be discussed below, the Court agrees.

A.   PATENT ELIGIBILITY

Pursuant to Section 101, an invention is patent-eligible if it claims "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  The Supreme Court has long held that Section 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable."  Alice Corp. v. CLS Bank Int'l, 134 S. Ct. 2347, 2354 (2014) (quoting Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2116 (2013)).  "[T]he concern that drives this exclusionary principle [is] one of pre-emption."  Id.  Laws of nature, natural phenomena, and abstract ideas constitute "the basic tools of scientific and technological work"; consequently, monopolization of these tools might tend to impede innovation, thereby thwarting the primary objective of patent laws.  Id.

Whether a patent embraces ineligible subject matter presents a question of law.  Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1333 (Fed. Cir. 2012).  Distinguishing patents that claim patent-ineligible laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts requires a two-pronged inquiry.  Alice, 134 S. Ct. at 2355.  First, the court must determine whether the claims at issue are directed to a patent-ineligible concept.  Id.  If so, the court must then consider the elements of each claim, both individually and as an ordered combination, to determine whether the additional elements transform the nature of the claim into a patent-eligible application.  Id.  The second prong involves the search for an "inventive concept," i.e., one

1   or more elements sufficient to ensure that the patent in practice amounts to significantly

2   more than a patent upon the abstract idea itself.  Id.

3       **B.    BURDEN OF PROOF**

4           As a threshold matter, the parties disagree regarding the burden of proof that attends

5   questions of patentability under Section 101.  INTTRA argues that patents enjoy a

6   presumption of validity, and therefore, the clear and convincing evidence standard applies.

7   GT Nexus argues that patent-eligibility is a question of law, and therefore, the

8   preponderance of the evidence standard applies.

9           There is a paucity of direct authority on this issue.  Neither the Supreme Court nor

10  the Federal Circuit Court has directly addressed the applicable standard.  See Alice, 134 S.

11  Ct. at 2347 (deciding issue of patent eligibility without mention of the burden of proof);

12  Ultramercial Inc. v. Hulu, LLC, 772 F.3d 709 (Fed. Cir. 2014) (same); see also id., at 720-

13  721 (Mayer, J., concurring) (noting that the Supreme Court has "never mentioned--much

14  less applied--any presumption of eligibility" in a Section 101 action, and arguing that the

15  presumption should not apply in such cases).  Without definitive guidance, district courts

16  are split regarding the appropriate burden of proof.  Compare Modern Telecom Sys. LLC v.

17  Earthlink, Inc., 2015 WL 123992, at *7-8 (C.D. Cal. March 17, 2015) (rejecting the clear

18  and convincing standard), with Trading Tech. Int'l Inc. v. CQG, Inc., 2015 WL 774655, at

19  *3 (N.D. Ill. Feb. 24, 2015) (applying the clear and convening standard).

20          As discussed in further detail below, however, the patents-in-suit embrace ineligible

21  subject matter regardless of which standard in employed.  For that reason, the Court need

22  not resolve this dispute.[6]

23      **C.    ABSTRACT IDEA**

24          At the first stage of the patent eligibility inquiry, a court must determine whether the

25  patents embrace an abstract idea.  Here, the patents-in-suit describe a third-party portal that

26  ────────────

27          [6] In connection with the instant motion, INTTRA filed a request for leave to file a
    statement of recent decision regarding the proper burden of proof.  Dkt. 114.  In light of the
    Court's finding that the burden of proof does not affect the outcome of this motion,

28  INTTRA's administrative motion is DENIED as moot.

1  facilitates the process of booking and tracking shipping containers across multiple carriers.

2  It follows from prior precedent that the patents-in-suit embrace an abstract idea--

3  "intermediated booking and tracing of shipping containers."  Mot. at 5.

4         In identifying the idea covered by a given patent, "[c]ourts should recite a claim's

5  purpose at a reasonably high level of generality."  Enfish, LLC v. Microsoft Corp., 56

6  F. Supp. 3d 1167, 1173 (C.D. Cal. 2014); see also Open Text, 78 F. Supp. 3d at 1046 (at the

7  first prong of the patent eligibility inquiry, a court "distills the gist of the claim").  Here, the

8  recited purpose of the patents is consistent with the invention's summary, which is to

9  provide "a method and system that enables domestic and international transportation users

10 to handle shipping transactions through a single common system through a neutral

11 transportation portal."  '794 patent, col.2, ll.52-55.  Moreover, the patents' recited purpose

12 is consistent with the language of the claims.  See, e.g., id., col.15, ll.38-39 (disclosing a

13 "system of creating booking requests pertaining to information relating to the transport of a

14 container"); '387 cert., col.1, ll.24-26 (disclosing a "computer system providing multiple

15 shippers and multiple carriers with a neutral transportation portal for storing and accessing

16 container shipping status information").  "Although certain additional limitations . . . add a

17 degree of particularity, the concept embodied by the majority of the limitations describes

18 only the abstract idea of [booking and tracing container shipments through a third party]."

19 Ultramercial, 772 F.3d at 715.  "Intermediated booking and tracing of shipping containers"

20 thus aptly describes the idea underlying the patents-in-suit.

21        INTTRA complains that GT Nexus proposes "several competing formulations of the

22 "abstract idea," and argues that the failure to settle on one formulation undermines any

23 conclusion that the patents-in-suit are, in fact, directed to an abstract idea.  Opp'n at 7, n.3.

24 INTTRA's reliance on Ameranth, Inc. v. Genesis Sol., Inc., 2014 WL 7012391, at * 4

25 (C.D. Cal. Nov. 12, 2014) is misplaced.  In Ameranth, after the defendant's formulation of

26 the abstract idea proved faulty, the district court declined the defendant's invitation to

27 identify for itself the abstract idea embraced by the disputed claim.  Here, GT Nexus

28 plausibly identifies the abstract idea(s) embraced by the patents-in-suit.  See Mot. at 8

("booking shipping through a third party), 12 ("intermediated container booking and tracking"), 14 ("tracking a container between two locations").  Furthermore, alternative formulations of an abstract idea are not necessarily competing; indeed, given their nature, abstract ideas may be susceptible to varying descriptions.  See, e.g., Ultramercial, 772 F.3d at 715 (describing the abstract idea embraced by the claims as both "a method of advertising as an exchange or currency" and "showing an advertisement before delivering free content").  In this case, any varying formulations of the abstract idea are consistent, and thus, inconsequential.

The court further finds that booking and tracing container shipments through a third party is an abstraction.  Although the Supreme Court has not delimited the precise contours of what constitutes an "abstract idea," the Court has provided some guiding principles.  DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1256 (Fed. Cir. 2014).  For instance, "fundamental economic and conventional business practices" are patent-ineligible abstract ideas.  Id. (citing Bilski, 561 U.S. at 611 (finding hedging patent ineligible); Alice, 134 S. Ct. at 2356 (finding intermediated settlement patent ineligible)).  As demonstrated by the specification of the patents-in-suit, the shipping of goods is a conventional business practice "long prevalent in our system of commerce."  Alice, 134 S. Ct. at 2350.  Additionally, use of a third party intermediary is "a building block of the modern economy" and an established practice in the shipping industry.  Id.  Indeed, the patents' specification describes the role of "freight forwarders," who serve to "coordinate the transportation of goods on behalf of shippers."  '794, col.1, ll.49-50.  Intermediated booking and tracing of shipping containers thus falls squarely within the ambit of abstract ideas.  See Alice, 134 S. Ct. at 2357.

In an effort to avoid the foregoing conclusion, INTTRA raises two arguments.  First, INTTRA argues that the patents-in-suit are not directed to an abstract idea, but rather, to "a novel computer network architecture, the heart of which is the claimed 'common carrier system.'"  Opp'n at 7.  The Court notes that only the '142 patent expressly discloses a "computer network"; the remaining patents disclose system and method claims, albeit with

the recitation of various computer components.  Regardless, "[c]ourts must ignore generic recitation of hardware at step one, when the claimed hardware essentially performs a method."  California Inst. of Tech. v. Hughes Commc'ns Inc., 59 F. Supp. 3d 974, 993 (C.D. Cal. 2014); see also Enfish, 56 F. Supp. 3d at 1176 ("When a claim recites a computer generically, the Court should ignore this element in defining the claim's purpose.") (citing Alice, 134 S. Ct. at 2356-2357 (defining the claims' purpose as intermediated settlement, not achieving intermediated settlement on a computer)).

Here, "[w]hat [INTTRA] characterizes as a [specific network architecture] . . . is purely functional and generic."  Alice, 134 S. Ct. at 2360 (finding that the disclosed hardware, a data processing system with a communications controller and data storage unit, was not "specific").  The claimed network architecture describes user and carrier computers connected to a "common carrier system," itself comprised of servers and databases.  The recited hardware is non-specific.  See buySAFE, 765 F.3d at 1355 (noting that a computer network connecting an intermediary to other institutions is generic); Accenture Glob. Servs., GmbH v. Guidewire Software, Inc., 728 F.3d 1336, 1344 (Fed. Cir. 2013) (finding a "combination of computer components" including a client component, a server component, and multiple databases, generic).

INTTRA asserts that the "claim elements define a specific network architecture because they specify the network's physical components and their functional organization and configuration."  Opp'n at 8.  This argument is misguided.  Contrary to INTTRA's assertion, the fact that the patents-in-suit "specify the network's physical components" is immaterial.  See Alice, 134 S. Ct. at 2358 ("that a computer 'necessarily exist[s] in the physical, rather than purely conceptual, realm' . . . is beside the point").  Furthermore, specification of the components' "functional organization and configuration" only serves to demonstrate that the Court may ignore the physical components themselves at the first stage of the eligibility inquiry.  See id., at 2360 (disregarding recitations of "purely functional" computer components).  That the patents recite computer components solely by their function (e.g., a server configured to transmit a booking request) underscores that the

1  patents are not directed to a unique network architecture, but rather, to an underlying

2  function that happens to be performed on a computer.

3       Second, with regard to the '387 and '794 patents, INTTRA parses the claims and

4  identifies certain limitations that it argues are not "inherent aspects" of booking and tracing

5  container shipments.  Opp'n at 8-9.  For example, INTTRA asserts that the '794 patent

6  recites the use of a "contract reference," i.e., an established shipping rate between a carrier

7  and a shipper, and argues that this feature was not typical in the shipping industry.  Id. at 9.

8  The Court "do[es] not agree with [INTTRA] that the addition of merely novel or non-

9  routine components to the claimed idea necessarily turns an abstraction into something

10 concrete."  Ultramercial, 772 F.3d 715.  "In any event, any novelty in implementation of

11 the idea is a factor to be considered only in the second step of the Alice analysis."  Id.; see

12 also Gametek LLC v. Zynga, Inc., 2014 WL 1665090, at *4 (N.D. Cal. Apr. 25, 2014)

13 (accepting the patent challenger's recitation of the patent's purpose where the patent holder

14 identified "several limitations embodied in the claim," but failed to "offer any alternative

15 characterization of the idea underlying its claims").

16      The Court concludes that the patents are directed to an abstract idea.  Accordingly,

17 the Court turns to the second prong of the patent eligibility inquiry.

18      **D.  INVENTIVE CONCEPT**

19      At the second stage of the eligibility inquiry, a court must determine whether the

20 patent claims add "an 'inventive concept' sufficient to 'transform' the claimed abstract idea

21 into a patent-eligible application."  Alice, 134 S. Ct. at 2357 (quoting Mayo Collaborative

22 Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1293 (2012)).  Here, the Court finds that

23 the patent claims merely automate the practice of booking and tracking shipping containers;

24 this automation is insufficient to transform the nature of the patents.

25      Transformation of an abstract idea into a patent-eligible application "requires 'more

26 than simply stat[ing] the [abstract idea] while adding the words "apply it."'"  Alice, 134 S.

27 Ct. at 2357 (quoting Mayo, 132 S. Ct. at 1294).  A claim "must include 'additional features'

28 to ensure 'that the [claim] is more than a drafting effort designed to monopolize' the

[abstract idea]."  Id., (alterations in original) (quoting Mayo, 132 S. Ct. at 1297).  "For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'"  Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (quoting Alice, 134 S. Ct. at 2359)).  The "recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible."  DDR, 773 F.3d at 1256.  With these principles in mind, the Court considers each of the patents-in-suit.[7]

### 1. The '794 Patent

The '794 patent includes four independent system claims and thirty-seven dependent claims.  See '794 patent, Dkt. 79-4.  Each independent claim (i.e., claims 1, 22, 30, and 32) discloses "[a] system for creating booking requests pertaining to information relating to the transport of a container, said information including at least one of a carrier name, departure date, departure time, departure location, arrival date, arrival time, arrival location, origin, and destination."  Id., col.15, ll.38-42; col.17, ll.18-22; col.18, ll.12-16; col.19, ll.6-10.  Claim 1 is illustrative and recites a system comprising:

> a plurality of entities registered with the system, each entity having a computer storage, each of the entities configured to communicate with users over a first communication pathway to establish a shipping rate pertaining to the shipment of containers using a given entity and generate a contract reference; and

> a server at a second entity that is configured to receive information from said computer storage of said plurality of entities over a second

---

[7] INTTRA does not stipulate to the use of representative claims for the purpose of this motion, see Opp'n at 10, n.4, and thus, GT Nexus must address each claim.  Shelcore, Inc. v. Durham Indus., Inc., 745 F.2d 621, 625 (Fed. Cir. 1984).  Nevertheless, four patents encompassing 112 claims are at issue.  Upon review, the Court finds that the asserted claims are "substantially similar and linked to the same abstract idea."  Content Extraction, 776 F.3d at 1348.  Additionally, although INTTRA identifies claims that purportedly embrace inventive concepts, INTTRA does not argue validity on a claim-by-claim basis.  The Court therefore finds that a global approach is appropriate.  See id. (affirming the district court's decision to designate and address representative claims).  In addressing each patent, the Court will designate and analyze a representative claim, and then address the remaining claims in terms of how they differ from or add to the representative claim.

communication pathway and provide a computer user interface for display on a user's computer over a third communication pathway, the computer user interface including a field configured to receive the contract reference, said server configured to receive from a user over the third communication pathway an electronic booking request including the information relating to the transport of a container, said server including a storage configured to store templates of electronic booking requests and provide one of said templates based on a search of templates performed by said user, said electronic booking request received over the third communication pathway having been created from one of said stored templates,

said server further configured to transmit said electronic booking request including the contract reference to at least a first entity of said plurality of entities over the second communication pathway, wherein the contract reference pertains to the established shipping rate between at least the first entity and the user.

Id., col.15, l.38 to col.16, l.18.

The Court finds that the '794 patent simply adds generic computer limitations to the abstract idea of booking container shipping through a third party. The claimed system recites the use of a computer to create and transmit electronic booking requests using a neutral portal. With the use of templates, the computer system receives an electronic booking request from the shipper, generates and applies a contract reference, and transmits the request to a carrier. In other words, "[t]he computer is itself the intermediary." Alice, 134 S. Ct. at 2359. The pertinent question thus becomes "whether the claims here do more than simply instruct the practitioner to implement the abstract idea of [intermediated booking] on a generic computer." Id. They do not. Claim 1 recites generic computer components, i.e., "servers" and "storage," which are configured to perform "purely conventional" computer functions, i.e., to "receive," "store," and "transmit" information. See, e.g., id. (the use of a generic computer to create and maintain "shadow" accounts, obtain data, adjust account balances, and issue automated instructions is purely conventional). Viewed separately or as an ordered combination, the claim elements recite nothing more than "a computer system

1   configured to implement the relevant concept," and thus, are insufficient to transform

2   the abstract idea into a patent-eligible application.  Id. at 2359-60.

3          The remaining independent claims of the '794 patent likewise fail to provide an

4   inventive concept.  As GT Nexus persuasively argues, independent claims 22, 30, and

5   32 add trivial limitations, none of which meaningfully transforms the abstract idea

6   underlying the patents.  Claim 22 describes the system of claim 1, but with the server

7   further "configured to generate electronic event notification messages."  Claim 30

8   describes the many types of information (e.g., routing requests, shipping instructions,

9   and booking activity plans) that the server must be able to receive.  Finally, claim 32

10  describes a server configured to perform the steps of claim 1, i.e., to receive, store, and

11  transmit a booking request, but with the added functionality of receiving a response

12  from the carrier and forwarding that response to the shipper.  Like claim 1, these

13  claims recite generic computer systems configured to perform conventional functions.

14         The dependent claims, describing other tasks and functions that the claimed

15  systems and/or servers must perform, are also lacking.  Specifically, claims 2-4

16  describe various methods for generating a booking request (e.g., from a template or

17  prior draft).  Claims 5 and 7-12 describe additional information (e.g., routing requests

18  and shipping instructions) that users and carriers may transmit.  Claim 6 simply recites

19  a situation "wherein the user is a new customer of the [carrier]."  Claims 13-19, 26-28,

20  and 33-35 describe various routine formats (e.g., XML or EDI) and methods

21  (e.g., email or pop-up dialogue box) for inputting, receiving, and transmitting

22  information.  Claims 20, 29, 31, and 41 describe the forwarding of booking requests to

23  carriers.  Claim 21 recites a user sending shipping instructions after the carrier confirms the

24  booking.  Claims 23-25, 36-38, and 39 describe event notification, booking confirmations,

25  and booking activity plans, respectively.  Finally, claim 40 describes the modification of a

26  booking mid-shipment.  The foregoing limitations appear routine and incidental to the

27  performance of the patent's purpose, i.e., intermediated booking.

28

In opposing the instant motion, INTTRA identifies several features of the '794 patent that add purportedly meaningful limitations to the claims. However, these features fail to provide the requisite inventive concept. INTTRA asserts that the claims disclose the use of a "contract reference" regarding the established shipping rate between a carrier and a shipper. Opp'n at 9. Contrary to INTTRA's assertion, use of a contracted shipping rate was already known in the industry. See '794 patent, col.1, ll.14-17 (explaining that shippers typically contract with carriers to "provide a predetermined volume of business . . . at an agreed upon rate"). INTTRA further asserts that the claims disclose the use of a "booking activity plan" (i.e., "transport modes, transshipment locations, and interim arrival and departure dates and times," '794 patent, col.16, ll.56-58) to provide "event notification." Opp'n at 9, 13. These features, however, add only insignificant post-solution activity in automating the abstract idea of booking container shipments. See Mayo, 132 S. Ct. at 1298 (insignificant post-solution activity cannot transform an otherwise abstract idea into a patent-eligible application). The patent recites generic computer systems to perform these features, without reciting any novel hardware or programming. Accordingly, these features fail to provide an inventive concept.

### 2. The '387 Patent

The '387 patent includes seven independent claims and thirty-eight dependent claims. See '387 cert., Dkt. 79-5. Claim 1 is illustrative and recites "[a] computer system providing multiple shippers and multiple carriers with a neutral transportation portal for storing and accessing container shipping status information." Id., col.1, ll. 24-26. The system comprises "a computer server configured to receive information from two or more computers, each associated with a respective carrier entity registered with the system and to provide a common carrier interface, said common carrier interface enabling multiple shippers to communicate with multiple carriers through a neutral transportation portal." Id., ll.26-35. The server, which "is not hosted by either a shipper or a carrier entity," permits users to: (1) create a booking request; (2) submit a booking request; (3) receive confirmation of a booking request; and (4) receive container tracking and tracing

1  information associated with the booking request.  Id., ll.35-45.  To enable the receipt of

2  track and trace information, the server: (a) determines at least one carrier entity associated

3  with a booking request; (b) periodically receives and stores track and trace information

4  from the carrier; (c) receives a tracking request; (d) searches the stored information for a

5  match; and (e) provides the track and trace information.  Id., ll.45-65.

6      The Court finds that, like the '794 patent, the '387 patent simply adds generic

7  computer limitations to the abstract idea of booking and tracing shipping containers

8  through a third party.  The claimed system discloses the use of a computer to perform

9  two tasks: (1) book a shipping container; and (2) track a shipping container.  To

10  perform these tasks, the claim recites a handful of routine steps at a high level of

11  generality.  See Alice, 134 S. Ct. at 2357 ("[s]imply appending conventional steps,

12  specified at a high level of generality" does not supply an inventive concept).  For

13  example, to book a shipping container, the server creates, submits, and confirms a

14  booking request.  INTTRA counters that "pre-storing shipping container status

15  information" provides the requisite inventive concept.  Opp'n at 11.  However, pre-

16  storing status information constitutes insignificant pre-solution activity incidental to the

17  performance of the abstract idea.  See Ultramercial, 772 F.3d at 716 (insignificant pre-

18  solution activity is insufficient to transform an abstract idea into a patent-eligible

19  application).  Furthermore, pre-storing information amounts to nothing more than

20  conventional data storage, which is not even arguably inventive.  See Content

21  Extraction, 766 F.3d at 1347 ("The concept of data collection, recognition, and storage

22  is undisputedly well-known."); CyberSource Corp. v. Retail Decision, Inc., 654 F.3d

23  1366, 1370 (Fed. Cir. 2011) ("Mere data-gathering steps cannot make an otherwise

24  nonstatutory claim statutory.").

25      The remaining independent claims of the '387 patent similarly fail to provide an

26  inventive concept.  Specifically, claims 5 and 8 are system claims nearly identical to

27  claim 1.  Claim 9 varies in form, reciting "[a] method claim for providing tracking and

28  tracing information relating to a container," but then restates much of the substance of

claim 1.  Likewise, claim 10 recites "[a]n apparatus including one or more computers that enables multiple shippers to book and track container shipments with multiple carriers."  However, the claimed apparatus is simply comprised of "a processor" and "a memory storing computer executable instructions" to perform the method described in claim 9.  These claims do not differ meaningfully from claim 1.  <u>See</u> <u>Alice</u>, 134 S. Ct. at 2360 (holding that the form of the claims was immaterial where the method claims recited an "abstract idea implemented on a generic computer" and the system claims recited a "handful of generic computer components configured to implement the same idea").  Finally, claims 11 and 18 are method and system claims substantially similar to the other independent claims, but with the addition of a "user interface."

The patent's dependent claims are also lacking.  Specifically, claims 2, 12, and 19 describe a system that can track and trace multiple containers transported by multiple carriers.  This is the definition of intermediated tracking and tracing.  Claims 3-4, 13-14, and 20-21 state simply that the carriers are transporting goods.  Claims 15, 22, 25, 37, and 44 describe tracking and tracing a single container transported by multiple carriers, each responsible for a leg of the trip.  Claims 6, 16, and 23 describe periodically polling carriers for track and trace information.  Claims 7, 17, 24, 26, 38 and 48 disclose that a shipper or other entity may request track and trace information.  Of note, claims 27, 32, and 39 describe translating track and trace information into a "common carrier system neutral format."  INTTRA argues that translating status information into a neutral format provides a meaningful limitation.  Opp'n at 11-12.  The claims do not disclose a novel translation method, however, and thus contemplate routine computer functions.  Continuing on, claims 28, 33, and 40 recite the steps for submitting a booking request, and claims 29-30, 34-35, and 41-42 recite the use of a booking activity plan and routing information to provide track and trace information.  Finally, claims 31, 36, and 43 describe the transmission of shipping instructions.

### 3.    The '142 Patent

The '142 patent includes four independent claims and eleven dependent claims.  See '142 cert., Dkt. 79-3.  Independent claims 1, 13, and 14 each disclose "[a] computer network providing multiple shippers and multiple carriers with a neutral transportation portal for storing and accessing container shipping status information."  Id., col.1, ll.24-26; col.3, ll.11-12; col.4, ll.7-9.  Claim 1 is illustrative and recites a network of two customer computers, two carrier computers, and a shipping coordinator computer including a storage.  Id., col.1., ll.27-45.  The shipping coordinator computer is configured to: (1) receive and store information from the carrier computers; (2) receive information requests from the customer computers, search for a match in the stored information, and provide the matching information; and (3) receive and store information relating to a booking prior to receiving any request for the same.  Id., col.1, l.45 to col.2, l.7.

In the same fashion as the '794 and '387 patents, the '142 patent simply adds generic computer limitations to the abstract idea of booking and tracing shipping containers through a third party.  By receiving, storing, and transmitting container status information, the shipping coordinator computer acts as an intermediary and information warehouse.  In fulfillment of this purpose, the claim recites a handful of routine steps at a high level of generality.  INTTRA argues that the '142 patent is imbued with an inventive concept, emphasizing that the patent recites: "a shipping coordinator computer that provides container shipping status information for multiple carriers"; "pre-storing multi-carrier container shipping status information"; and "a common carrier portal that is not hosted by either a shipper or carrier entity."  Opp'n at 12.  As previously discussed, however, pre-storing information fails to provide a meaningful limitation.  Additionally, recitation of a coordinator computer and a third-party portal discloses nothing more than the abstract idea itself, i.e, *intermediated* booking and tracing.  Indeed, the disclosed invention assumes and automates roles previously performed by other actors in the shipping industry.  See '794 patent, col.1., ll.48-61 (describing the role of freight forwarders, who coordinate the transportation of goods on behalf of shippers); id.,

col.2, ll.16-23 (describing carrier workgroups dedicated to providing track and trace information to shippers).  The fact that a computer performs these roles is insufficient to transform the claims.  See Alice, 134 S. Ct. at 2357 ("introduction of a computer into the claims does not alter the analysis"); Ultramercial, 772 F.3d at 716-17 ("adding a computer to otherwise conventional steps does not make an invention patent-eligible").

The remaining claims of the '142 patent similarly fail to provide an inventive concept.  Independent claim 13 is substantially similar to claim 1, except that the customer computer forwards the booking request to the shipping coordinator computer, which in turn forwards the request to the carrier computer.  Independent claim 14 simply reiterates the configuration requirements for the shipping coordinator computer, with the added requirement that it provide a user interface.  Independent claim 15 varies only in form, reciting "[a] method, performed by a shipping coordinator computer . . . for coordinating container bookings."  The dependent claims are also lacking.  Specifically, claims 4 and 6 describe the network according to claim 1, but with one or more additional carrier computers.  Claim 7 describes the computer network according to claim 6, wherein the shipping coordinator computer receives information requests relating to multiple bookings, and forwards each request to the appropriate carrier computer.  Finally, claims 2-3, 5, and 8-12 describe various routine formats and methods (e.g., Internet or email) by which the customer, carrier, and shipping coordinator computers transmit, access, and receive booking information.

### 4.    The '119 Patent

The '119 patent includes two independent claims and nine dependent claims.  See '119 cert., Dkt. 79-6.  Claim 1 is illustrative and recites "[a] computer system" comprising "a server of a shipping intermediary including a computer storage, said server configured to generate and forward a user interface."  '119 patent, col.15, ll.40-43.  The claimed user interface provides "container shipping information . . . regarding multiple bookings originating from multiple carriers."  Id., ll.44-48.  The user interface includes a first region where a shipper inputs identification information for a booking made directly with a

carrier, and a second region that displays the results, including status information.  Id., ll.48-57.  The server receives and stores status information prior to receiving any request, searches the computer storage for one or more bookings based on information input by the shipper, and displays the results.  Id., ll.58-67.  Claim 14 is substantially similar, but relates to a booking made through the intermediary.

Like the other patents-in-suit, the '119 patent simply adds generic computer limitations to the abstract idea of tracing shipping containers through a third party.  Again, the claimed system acts an intermediary and information warehouse, but with added recitations regarding a user interface.  As disclosed in the claims, the user interface simply has two "regions"--one for inputting and one for displaying information.  An interface to input and display information constitutes only insignificant post-solution activity in automating the abstract idea of tracing container shipments.  Mayo, 132 S. Ct. at 1298 (insignificant post-solution activity cannot transform an otherwise abstract idea into a patent-eligible application).  INTTRA argues that the '119 patent is imbued with an inventive concept because it recites a shipping coordinator computer and the pre-storing of status information.  Opp'n at 12.  As previously discussed with regard to the '142 patent, however, these limitations are insufficient to transform the abstract idea into a patent-eligible application.

The patent's dependent claims, describing other tasks and functions that the claimed system must perform, are also lacking.  Specifically, claims 2-4 and 6-8 describe searches for booking status information based on various kinds and combinations of identification information (e.g., a container number).  Claim 5 describes a shipper accessing information from multiple carriers via the user interface, and claim 9 describes periodic polling of the carrier for information.  Finally, claim 10 describes a booking that corresponds to a single container transported by multiple carriers, each responsible for one leg of the trip.  Like the limitations of the other patents-in-suit, these limitations appear routine and incidental to the performance of the patents' purpose, i.e., intermediated tracking.

In view of the foregoing, the Court finds that the patents-in-suit fail to satisfy the conditions and requirements for patent eligibility set forth in Section 101.  GT Nexus is therefore entitled to judgment on the pleadings.

### E.   RELIEF

The Court notes that not all parties named as cross-defendants by INTTRA have moved for judgment on the pleadings.  Given the invalidity of the patents-in-suit, however, the cross-defendants are nonetheless entitled to dismissal.  See Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) ("a [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related"); accord Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802 (9th Cir. 1995); Abagninin v. AMVAC Chemical Corp., 545 F.3d 733, 742-43 (9th Cir. 2008).  Similarly, although GT Nexus' motion addresses INTTRA's counterclaims, the Court's finding of invalidity is also dispositive of GT Nexus' affirmative claim for declaratory relief.

## IV.   CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      INTTRA's Administrative Motion for Leave to File Statement of Recent Decision, Dkt. 114, is DENIED as moot.

2.      GT Nexus' Motion for Judgment on the Pleadings, Dkt. 79, is GRANTED.

3.      The claims alleged in the Cross-Complaint are dismissed with prejudice.

4.      The Court enters a declaratory judgment that U.S. Patent Nos. 7,756,794, 7,761,387, 7,752,142, and 7,827,119 are invalid under 35 U.S.C. § 101.

5.      All other pending motions are DENIED as moot.

6.      The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated:  11/5/15

Saundra B Armstrong

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge